## SAPER v. CITY OF NEW YORK.
### No. 267, Docket 20977.

Circuit Court of Appeals, Second Circuit.

May 25, 1948.

David Haar, of New York City, for appellant.

John P. McGrath, Corp. Counsel, of New York City (Isaac C. Donner, Bernard H. Sherris, and LeRoy Mandle, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The first point on this appeal concerns the validity of a claim against an estate in bankruptcy for certain sales and business taxes levied by the City of New York against the bankrupt. The trustee concedes the validity of such taxes as were levied upon the bankrupt's sales of machinery manufactured by it, but contests the tax levied on its purchases of materials. But, as stated in the opinion below, D.C.S.D.N.Y., 75 F.Supp. 458, this is directly contrary to the law and the rulings under it. It is quite settled that both seller and purchaser may be held liable for the city sales tax, though in fact it is primarily imposed upon the purchaser, who must pay it to the City Treasurer if he has failed to pay it to his vendor. § N41—2.0, subds. e, f, of the Administra-

tive Code, New York City. Kesbec, Inc., v. McGoldrick, 278 N.Y. 293, 297, 16 N.E.2d 288, 119 A.L.R. 536, reargument denied 278 N.Y. 716, 17 N.E.2d 136; Fifth Ave. Bldg. Co. v. Joseph, 272 App.Div. 449, 71 N.Y.S. 2d 566; City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333. The liability of the estate is clear.

■ The other point, however, the liability of the estate for interest upon these tax claims after bankruptcy and until they are paid, is interesting, important, and difficult. Both the referee and the district court have allowed interest, at the high rate provided by the local code of one per cent per month, so that the accumulating interest is fast approaching the face of the claim.[1] The decision must affect all tax claims in bankruptcy, from those of the federal government to those of any state or subdivision thereof. The matter has been in dispute and must remain so until settled by the Supreme Court. As will appear, the members of this court are not in accord as to the result to be reached. The court as presently constituted is agreed that Judge Coxe's decision, D.C.S.D.N.Y., 75 F.Supp. 458, should be reversed. His decision, however, was in accord with Davie v. Green, 1 Cir., 133 F. 2d 451 (which had reversed a referee and a district judge), and has the support of some other district court opinions, e.g., In re Flayton, D.C.E.D.N.Y., 42 F.Supp. 1002; and cf. In re L. Gandolfi & Co., D.C.S.D.N.Y., 42 F.Supp. 706. It is contrary to the decision of Judge Bright in Re Union Fabrics, D.C. S.D.N.Y., 73 F.Supp. 685, the appeal from which is decided herewith,[2] with the writer of this opinion alone of the court there sitting in agreement with Judge Bright. Our decision herein was perhaps somewhat foreshadowed by the remarks of Judge L. Hand in Hammer v. Tuffy, 2 Cir., 145 F.2d 447, 449, leaving the question open, and by those of Judge Swan in United States v. Roth, 2 Cir., 164 F.2d 575, pointing out that under the recent congressional enactments tax claims were treated substantially as debts of the bankrupt. It is in accord with the views of text writers, notably Messrs. Moore and Oglebay, 3 Collier on Bankruptcy, 14th Ed. 1941, ¶ 63.16, reiterated in 1946 Cum.Supp. 131, 132, also Mr. Oglebay in 17 J.N.A.Ref.Bankr. 127, 129, 130, 21 id. 106, 107, 22 id. 41, and the commentator in 61 Harv.L.Rev. 354.

For reasons both of administrative convenience and of fundamental justice and equity it has been steadily held, following the English practice, that interest does not accrue upon claims during the period of bankruptcy administration. Sexton v. Dreyfus, 219 U.S. 339, 344, 31 S.Ct. 256, 55 L.Ed. 244; Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163, 165, 67 S.Ct. 237, 91 L.Ed. 162; 3 Collier, loc. cit. supra.[3] A single exception, that for tax claims, was developed judicially. It appears to have begun with In re Kallak, D.C.N.D., 147 F. 276, though the contemporaneous case of In re William F. Fisher & Co., D.C. N.J., 148 F. 907, held to the contrary. But the Kallak case set the pattern and was followed by other cases, including In re J. Menist & Co., 2 Cir., 290 F. 947, which, however, allowed interest only at the legal rate. When the Supreme Court reversed this holding to allow interest at the statutory rate, though without separate discussion of our particular problem, United States v. Childs, 1924, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299, the matter was considered settled. The reason for the rule was that the original Bankruptcy Act treated tax claims quite differently from other debts; instead of requiring their presentation in due course, it provided that "the court shall order the trustee to pay all taxes legally due and owing by

---

[1] The tax period involved was Nov. 1, 1940, to May 31, 1942; the petition in bankruptcy was filed Jan. 5, 1944, and the City's claim originally on May 19, 1944; the referee's order of allowance was made on July 18, 1947. In that order he allowed a sales tax of $495.61, with interest to date of $341.97, and a business tax of $19.72, with interest of $13.13, and made express provision for additional interest at the rate of 1% per month until payment.

[2] Carter v. United States et al., 2 Cir., 168 F.2d 274.

[3] If, however, a sufficiency of assets develops, the claims will bear interest; and though the usual rule applies also to secured claims, yet where the security itself yields interest or dividends, those are applicable to interest on the claims. 3 Collier, loc. cit. supra.

the bankrupt to the United States, State, county, district, or municipality, in advance of the payment of dividends to creditors." § 64, sub. a, 11 U.S.C.A. § 104, sub. a, before amendment. Hence the trustee was, in effect, compelled to search them out. So taxes were in altogether a separate class; they were to be paid before any administration of the estate, properly speaking, and thus had an absolute priority over the bankrupt's debts. In view of this peculiarly favored position, the like result as to interest was certainly not unnatural, even if not compelled.

In 1926, however, § 64, sub. a, was amended, by adding the words "in the order of priority as set forth in paragraph (b)"; and of the seven priorities provided in b, taxes came sixth or next to the last. Even that change might have been considered sufficient to reduce taxes to the status of debts in view of the obvious doubt as to the payment of interest upon a sixth claim in a series where the earlier five admittedly carried none. Moreover, § 64, sub. b, spoke of the debts "to have priority" in advance of the payment of dividends to creditors, "and to be paid in full out of bankrupt estates," in the order then stated; it was at least odd to think that a wage claim up to $600 was "paid in full" when paid without interest, whereas a tax claim of later priority was not so paid until interest of 12 per cent or more was included.[4] But the issue did not come before the Supreme Court; and apparently the lower federal courts continued their former practice. Cf. Horn v. Boone County, Neb., 8 Cir., 44 F.2d 920; In re Semon, D.C.Conn., 11 F.Supp. 18, modified on other grounds 2 Cir., 80 F.2d 81.

At any rate the process of assimilation of tax claims to other debts appears, to us at least, to have been completed by the Chandler amendments of 1938. Indeed we thus described the changes in United States v. Roth, supra, 164 F.2d at pages 577, 578: "By the 1938 amendments, however, taxes were classified as 'debts' within section 64, sub. a, 11 U.S.C.A. § 104, sub. a, and section 57, sub. n, 11 U.S.C.A. § 93, sub. n, was broadened to include 'all claims of the United States' and require them to 'be proved and filed in the manner provided in this section.'[5] Subdivision a of section 57, 11 U.S.C.A. § 93, sub. a, provides that a proof of claim shall state among other matters 'that the claim is justly owing from the bankrupt to the creditor'; * * * Thus it is apparent that the Act, as it now stands, treats the tax claim as a debt and the United States as a creditor which, like other creditors, must make proof of claim on a form" prescribed by the Supreme Court. This, then, took from tax claims their former favored position where no proof or other governmental action was necessary for their enforcement. Thenceforth they must be proved, or otherwise be barred, just like other debts of the bankrupt.

We see no reason to suppose that this did not place tax claims in the same situation as other debts with respect to interest also.[6] The chief ground taken in Davie v. Green, supra, and the other cases which argue for the priority of interest, as well as principal, though conceding its inequity, is that Congress by failing to exclude it has re-enacted the old rule. It is dubious at best to rely upon such congressional adoption where "a close scrutiny of the various reports and

---

[4] For the meaning of "paid in full" as limited to the principal, see Hammer v. Tuffy, supra, 145 F.2d at page 449.

[5] In addition, by these amendments the priority subdivision formerly § 64, sub. b, became § 64, sub. a, and the classes of priorities were changed to five instead of seven, the status of tax claims being still next to the last or (4) instead of (6). This was no advancement in position, since former classes (1), (2), and (3) were combined with (1). In 1946, there was added to (1) "the fees for the referees' salary fund and for the referees' expense fund." [This note is not a part of the quotation.]

[6] By making a tax claim a debt of the bankrupt it is brought within the terms of § 63, sub. a, 11 U.S.C.A. § 103, sub. a, defining provable debts, of which subd. (1) allows interest only up to the filing of the petition, and subd. (5) includes provable debts reduced to judgment after filing, but less costs incurred and interest after the filing. Hence under subd. (5), when a tax claim is reduced to judgment after the filing, interest must be deducted. This points up the anomaly of another rule for tax claims not reduced to judgment.

hearings on the Chandler Act or its predecessor bills reveals nothing to indicate that the problem was ever under consideration." 3 Collier on Bankruptcy, 1946 Cum.Supp., at n. 28a of ¶ 63.16; 61 Harv.L.Rev. 354. But it is submitted with deference that the pinch is on the other foot. When Congress provided that taxes must be proven like other debts and put them in, and well down in, a hierarchy of other claims, none of which bore interest, we think that like treatment was intended unless some specific exception was stated. This seems all the more likely when we recall the dubious and uncertain history of the original judicial exception.

This conclusion seems to us fortified by arguments of practicality and convenience —if not of equity, as stressed by Judge Bright—which would naturally appeal to legislators or draftsmen, if a careful exploration of the subject is to be attributed to them. Of course, the allowance of accruing interest to these various state and governmental units "would necessitate constant rescheduling and recomputation of dividends available." 61 Harv.L.Rev. 354, 355. And the net result will be to promote tax claims beyond what seems the clear intent of the statute.[7] Moreover, with the very heavy interest rates now collected by states and municipalities and upheld in Meilink v. Unemployment Reserves Commission of State of California, 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458, it is apparent that any bankrupt estate whose settlement is delayed for any period of time is likely to be eaten up by the accruing interest on the various taxes now levied against business enterprises. As Referee Hunt points out, 17 J.N.A.Ref.Bankr. 121, 122, no trustee can afford to resist any tax claims, even with proper defenses. With interest accruing thus rapidly, he must settle at once and stop the increase in amount. True, it is suggested that this will be a boon to failing debtors who otherwise might be forced to the wall by rapacious tax collectors driven to precipitous action because the claims do not bear interest. But this is based upon an assumption both of alertness upon the part of taxing officials and of the importance of this lone item in the tax structure of municipalities and the state and federal governments which seems to us to have little connection with reality.

Two further arguments of claimants must be noted. One is as to § 57, sub. j, an old provision of the law stating that debts owing the United States or any State or subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained "and such interest as may have accrued thereon according to law." Whether this has any meaning beyond the penalty or forfeiture cases we do not need to consider, for it seems clearly to be operable only *after* the question as to what, if any, interest is legal has been decided.[8] The other is that, since tax claims, if unpaid, are not discharged in bankruptcy, then the unpaid interest on tax claims will survive against the bankrupt even after payment of the tax claims themselves. No cases appear yet to have held that interest thus survives beyond the principal claim which gives it birth. But assuming arguendo that interest is not discharged upon payment of the tax claim, we do not see how that fact can be decisive on

---

[7] Assume a bankrupt to owe $1,000 to an employee for wages, $1,000 each to three taxing authorities, and $1,000 for rent given priority under state law. Under § 64, sub. a, which gives priority to the amount of $600 for wages and allows the others in order, these would be all paid in full if the assets were $5,000 and there were no other general claims beyond the $400 balance on the wage claim. But with interest allowed on the tax claims at 12% (or perhaps more) per annum during the bankruptcy, possible payments on the later claims would diminish in size as rapidly as Alice in Wonderland.

[8] In the companion case, the United States devotes much attention to various of the federal revenue laws and congressional debates as to changes in them with respect to interest against estates held by fiduciaries. But these do not offer any clear-cut solutions in themselves and are hardly available to change the stated priorities of a bankruptcy act. Obviously the intent of the latter is to treat federal, state, and municipal tax claims alike; it would be quite improper to accord the former alone some advantage based upon some newly discovered other federal law or regulation.

the present issue. When the Chandler Act was under consideration, the House bill made taxes dischargeable, while the Senate amendment retained existing law. Sen.Rep. No. 1916, 75th Cong., 3d Sess., 4, stated that the committee felt "that if Federal taxes were made dischargeable, it would open the door to evasion. The Treasury Department recommended against the House amendment." Thus this was done to protect the revenue, and consideration for, or against, the bankrupt was not an issue. The fact that the bankrupt may not have received an immunity he might desire is not ground for upsetting the statutory scheme of distribution of the estate in the hands of the trustee. The point is academic here —as it will often be—since the bankrupt is a corporation whose existence will be brought to an end by the bankruptcy.

Accordingly the order on appeal will be affirmed to the extent that it refuses to expunge the tax claims, but will be reversed so far as it allows interest after the filing of the petition on January 5, 1944.

Order affirmed in part and reversed in part.