**COMMONWEALTH OF MASSACHU-
SETTS v. THOMPSON.**

**In re PLYMOLD CORP.**

**No. 4545.**

United States Court of Appeals,
First Circuit.

June 7, 1951.

Woodbury, Circuit Judge, dissented.

Harry P. Levowich, Counsel, Division of Employment Security, Boston, Mass. (Francis E. Kelly, Atty. Gen., of Massachusetts, and John A. Brennan, Chief Counsel, Division of Employment Security, Boston, Mass. with him on brief), for appellant.

Lee M. Friedman (Friedman, Atherton, King & Turner, Boston, Mass. with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal by the Commonwealth of Massachusetts from an order of the United States District Court for the District of Massachusetts affirming an order of a Referee in Bankruptcy which stopped the running of interest on a tax claim of the Commonwealth as of the date of the filing of a petition in bankruptcy.

The essential facts can be stated briefly.

A petition in involuntary bankruptcy was filed against the debtor, Plymold Corporation, on August 23, 1947. Thereupon, without adjudication, proceedings upon the petition were stayed, and later that month the debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act of 1898, as amended by the Chandler Act, 52 Stat. 905, 11 U.S.C.A. § 701 et seq. Delay ensued occasioned by the necessity of settling a re-negotiation claim of the United States, but an amended plan of arrangement was filed on January 11, 1950, which was allowed the next day. All things necessary to complete the consummation of the amended plan having been complied with on June 2, 1950, the arrangement was confirmed three days later on June 5.

The Commonwealth of Massachusetts seasonably filed its claim against the debtor for contributions under its Employment Security Law, St.1941, c. 685, as amended, and claimed interest thereon at the statutory rate of 6% per annum down to the date of payment. The Referee allowed the claim, but refused to include interest after the date of the filing of the petition in bankruptcy on August 23, 1947. In doing so he relied upon City of New York v. Saper, 1949, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, and the court below affirmed relying upon the same case.

In our opinion the order should be affirmed for the reasons stated in United States v. General Engineering and Manufacturing Co., 8 Cir., 1951, 188 F.2d 80. This case is a square holding on the point raised by appellant in the case at bar and,

we think, the opinion by Judge Sanborn makes clear that the reasoning of City of New York v. Saper, 1949, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, which involved a straight bankruptcy proceeding, is equally applicable to a proceeding for an arrangement under Chapter XI of the Bankruptcy Act. A contrary view would present formidable practical difficulties in the administration of Chapter XI.

The order of the District Court is affirmed.

WOODBURY, Circuit Judge (dissenting).

Certainly the Saper case holds definitely, and of course authoritatively, that in bankruptcy tax claims are now like other claims in that they do not bear interest after the date of bankruptcy. But that holding is not directly controlling here for although this proceeding started with a petition in involuntary bankruptcy it was promptly converted into a Chapter XI arrangement proceeding which it continued to be thereafter. And, although many of the techniques and procedures of bankruptcy are used in arrangement proceedings under Chapter XI, nevertheless the fact remains that proceedings in bankruptcy have an entirely different purpose and aim from proceedings for an arrangement under Chapter XI. Bankruptcy has for its purpose the orderly, expeditious and economical liquidation of the bankrupt's available assets, and the distribution of the proceeds on an equitable basis as far as they will go to the creditors, to the end that creditors may realize as much as possible from the estate, and the bankrupt may be freed from his burden of accumulated debt so that he can start anew in business. Chapter XI arrangement proceedings, on the other hand, have for their purpose not the liquidation of a business but its financial rehabilitation. The purpose of an arrangement is first to permit the debtor to continue in the management of his business under the supervision of the court, or to put it temporarily under the management of a receiver or trustee, and second to establish a plan "for the settlement, satisfaction, or extension of the time of payment of * *

unsecured debts * * *." § 306(1), 11 U.S.C.A. § 706(1), to the end that eventually the debtor can satisfy his creditors and resume unsupervised control of his business. The end of bankruptcy is to bury a dead business; the end of a Chapter XI arrangement is to cure a sick one.

Thus in bankruptcy the interest of the owner in the property involved is wiped out, whereas in arrangement proceedings under Chapter XI it is not. Indeed it would seem that the owner's interest cannot even be affected. S. E. C. v. U. S. Realty Co., 1940, 310 U.S. 434, 452, 60 S.Ct. 1044, 84 L.Ed. 1293. This difference under decisions of the Supreme Court to be mentioned presently seems to me to require that a distinction be drawn between bankruptcy and arrangement proceedings so far as concerns interest on debts like the present which under § 64 of the Bankruptcy Act, as amended, 52 Stat. 874, 11 U.S.C.A. § 104, are given priority, and are entitled to be paid in full out of bankrupt estates in advance of the payment of dividends to creditors.

Although I recognize the administrative difficulties involved, it seems to me that to deny interest on the Commonwealth's claim would run afoul of the so called "absolute priority" rule, sometimes referred to as the "fixed principle", enunciated by the Supreme Court in Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co., 1899, 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130, applied in Northern Pacific Railway Co. v. Boyd, 1913, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, and firmly established in Case v. Los Angeles Lumber Products Co., 1939, 308 U.S. 106, 60 S.Ct. 1, 7, 84 L.Ed. 110. According to this rule or principle, "the stockholder's interest in the property is subordinate to the rights of creditors; first, of secured and then of unsecured creditors", and "any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation." Louisville Trust Co. v. Louisville N. A. & C. Ry. Co., supra, 174 U.S. at page 684, 19 S.Ct. at page 830, 43 L.Ed. 1130. This principle or rule

is included in the meaning of the phrase "fair and equitable" as words of art used in old § 77B, 11 U.S.C.A. § 207, now Chapter X, 11 U.S.C.A. § 501 et seq., Case v. Los Angeles Lumber Products Co., supra, 308 U.S. at pages 118, 119, 60 S.Ct. at page 8, 84 L.Ed. 110, and by clear parity of reasoning it is also included in the meaning of the same phrase in § 366(3) of Chapter XI. 52 Stat. 912, 11 U.S.C.A. § 766(3). See S. E. C. v. U. S. Realty Co., supra, 310 U.S. at page 452, 60 S.Ct. at page 1051, 84 L.Ed. 1293. Hence, in view of the fact that interest is entitled to the same priority as principal, Consolidated Rock Products Co. v. Du Bois, 1941, 312 U.S. 510, 527, 61 S.Ct. 675, 85 L.Ed. 982, and cases cited it seems to me that to deny interest on the Commonwealth's tax claim while permitting the debtor to continue in the ownership of its property and the control of its business would be to subordinate the right of a priority creditor to the interest of the owners of the business, in this case stockholders, and thus run directly counter to the "absolute priority" rule.