**SWORD LINE, Inc.**

v.

**INDUSTRIAL COMMISSIONER OF STATE OF NEW YORK.**

No. 132, Docket No. 22860.

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1954.

Decided April 27, 1954.

The debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., on July 30, 1948. On that same day the petition was approved and the court made an order enjoining and staying until final decree all persons from the commencement of any suit against the debtor. On July 24, 1950, respondent-appellee, the Industrial Commissioner of

the State of New York, filed a proof of claim in the amount of $98,209.97, representing unpaid pay roll contributions from October 1, 1946, to July 30, 1948, of $88,199.82, plus interest of $9,961.14 computed to July 30, 1950, and interest on the late payment of $49 01. The debtor filed objections to this claim on the ground that interest could be allowed only to July 30, 1948—the date of the filing of the petition for arrangement. Before the hearing on these objections and following the decision of the Supreme Court in United States v. General Engineering & Mfg. Co., 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682, which had been awaited, respondent, on April 18, 1952, filed an amended proof of claim in the amount of $88,592.31, which included interest only to July 30, 1948. The State did not apply to the court for leave to amend the claim; the debtor did not agree to the amendment. The claim was allowed on July 2, 1952, and has been paid in full according to a plan of arrangement confirmed July 31, 1952, under which claims entitled to priority were paid in full and claims not so entitled were paid in part, but in each case without interest beyond July 30, 1948.

On June 4, 1952, respondent, without leave of the bankruptcy court, filed in the office of the County Clerk of New York, pursuant to § 573(2) of N. Y. Labor Law, McK.Consol.Laws, c. 31, a warrant in the amount of $119,068.54, representing the claim as allowed, plus penalties and interest computed to May 31, 1952, in the amount of $30,476.23.

On July 2, 1952, the debtor moved before the Referee for (1) an order expunging the warrant from the state judgment docket, (2) a permanent injunction against any proceeding by the respondent against the debtor outside the bankruptcy court, and (3) a determination of the question whether or not interest arose on the claim of respondent after July 30, 1948. The Referee found, as a "conclusion of law," that respondent was not entitled to interest on his claim beyond the date of the filing of the debtor's petition for an arrangement;

accordingly he granted debtor's motion. Respondent petitioned for review of this order to the United States District Court, which vacated the injunction and held, inter alia, that the order of the Referee "is not to be construed as an adjudication that the claim of the Industrial Commissioner for interest and penalties accrued since July 30, 1948 is either invalid or has been paid." It did continue a temporary injunction until entry of the final decree and did order the warrant expunged from the judgment docket—an order which has been complied with. At the time of the hearing below a final decree had not been entered in the arrangement proceedings.

R. H. Guthrie, New York City (Mudge, Stern, Williams & Tucker and Ara P. Blanc, New York City, on the brief), for appellant.

Samuel Stern, Asst. Atty. Gen. of State of New York (Nathaniel L. Goldstein, Atty. Gen. of State of New York, Wendell P. Brown, Sol.-Gen., Albany, N. Y., and Francis R. Curran, Asst. Atty. Gen., on the brief), for appellee.

Before CLARK, FRANK, and HINCKS, Circuit Judges.

CLARK, Circuit Judge.

■ It is conceded, as it must be in the light of relevant Supreme Court decisions, that bankrupt estates cannot be directly used to pay post-bankruptcy interest on claims against the bankrupt for unpaid taxes. This was settled for ordinary bankruptcy by the leading case of City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710; for proceedings in reorganization by United States v. Edens, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682, affirming 4 Cir., 189 F.2d 876; for proceedings by way of arrangement by United States v. General Engineering & Mfg. Co., supra, 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682, affirming 8 Cir., 188 F.2d 80, and see Commonwealth of Massachusetts v. Thompson, 1 Cir., 190 F.2d 10, certiorari denied 342 U.S. 918, 72 S.Ct. 364, 96 L.Ed. 686; and even for a general assignment under

N. Y. Debtor & Creditor Law by United States v. Bloom, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682, affirming Pavone Textile Corp. v. Bloom, 302 N.Y. 206, 97 N.E.2d 755. This appeal raises the question whether, notwithstanding this current of authority, such interest may nevertheless be collected by direct action against a debtor after confirmation of its arrangement in Chapter XI proceedings.

It is the position of the State of New York, vigorously asserted here and elsewhere, that such collection may be made by using the ordinary remedies available against solvent debtors.[1] And this view appears to have been substantially the view of the district court in reversing the decision of the referee in bankruptcy for the debtor, although it did refrain from a final adjudication.[2] But since a plan of arrangement recognizing the insolvency of this bankrupt has been confirmed and payments made to carry it out, the issue is before us and must be decided. Particularly in the case of a reorganized or "arranged" corporation such as this is it clear that the State's position calls for payment of interest before the debtor can go ahead with its activities. That is, the Supreme Court rulings cannot then accomplish what they seem intended to do; on the contrary,

they will lead in actuality to simpler and harsher collection of the tax interest than if ordered through the medium of reorganization or arrangement. We do not believe that all this history and decision can really have been intended to produce so pyrrhic a result.

The basis of the State's claim rests upon the provisions in the Bankruptcy Act for priority and nondischargeability of tax claims and the complete assimilation of post-bankruptcy interest to the taxes themselves. Thus § 371 of the Act, 11 U.S.C. § 771, provides that the confirmation of an arrangement shall not discharge debts not dischargeable under § 17, 11 U.S.C. § 35, while § 17 excepts from discharge debts as "are due as a tax levied by the United States, or any State, county, district, or municipality."[3] In § 354 as now amended, 11 U.S.C. § 755, it is provided that, when an order in an arrangement proceeding is entered directing that bankruptcy be proceeded with, "only claims for taxes legally due and owing to the United States or any State or any subdivision thereof at the time of the filing of the original petition under this title," together with the ordinary provable claims, § 63, 11 U.S.C. § 103, "shall be allowed."[4] Since there is nothing in the

---

1. This is made most clear not only by respondent's specific contentions herein, but also by his citation to us, as correct and authoritative, of a decision by a referee in the Unemployment Insurance Referee Section of the State Department of Labor—Case No. E2340–53R, Starrett Television Corp.—holding an employer liable for interest on unpaid taxes during the pendency of arrangement proceedings in reliance on Judge Ryan's decision in this case.

2. In view of this and of the fact that respondent has not appealed from the order expunging the warrant from the state judgment docket, it may be suggested that injunctive relief now is premature. But the expunging of the direct holding by the referee in bankruptcy which would have settled the question, the absence now of any adequate protection for the plan of arrangement, and the direct threat of steps to collect, see note 1 supra, convince us that action is now necessary.

3. The provisions of § 226, 11 U.S.C.A. § 626, applying to reorganization proceedings, are somewhat differently framed, being to the effect that the *property* dealt with by the plan is free and clear of creditors' claims, and there is no specific exception for claims allowable under § 17, 11 U.S.C.A. § 35. But there is nowhere any suggestion that reorganization proceedings should be treated differently from those in ordinary bankruptcy or of arrangement; and, as we have seen, the Saper rule actually developed in a case of ordinary bankruptcy. Of course a differentiation between these proceedings would be most unfair and inequitable, and the rationale developed later in this opinion avoids necessity for any attempt to make it.

4. The corresponding section of Chapter X, § 238, sub. 3, 11 U.S.C.A. § 638, sub. 3, as amended, is identical in the language quoted.

Act which specifically covers either the allowance or the nondischargeability of interest on taxes, such a claim if based affirmatively on the statute must be brought within the terms here cited to gain the special immunity claimed. But the language is not apt for the purpose—thus such interest is hardly a tax "legally due and owing" at the time of the filing of the petition; and the history of the status of such claims and their treatment judicially is persuasive to the contrary. Nor can the State rest on the statute's silence and the assumption that claims survive unless expressly cut off. For we think the contrary true under the scheme of the Act.

Before the matter was settled by the ruling in the Saper case there had been sharp differences of view among federal judges and commentators on the issue— a situation not unnatural in view of the absence of statutory mandate. Without pausing here for a full citation of opposing authorities, we may refer to the able decision in favor of allowance of interest in Davie v. Green, 1 Cir., 133 F.2d 451, which persuaded two of our colleagues, Carter v. United States, 2 Cir., 168 F.2d 272, and was relied on by the dissenting justice in the Saper case, 336 U.S. 328, at page 341, 69 S.Ct. 554, 93 L.Ed. 710. Our opposing decision in Saper v. City of New York, 2 Cir., 168 F.2d 268, produced a conflict in and among circuits which led to the Supreme Court review settling the issue, City of New York v. Saper, supra, 336 U.S. 328, 69 S.Ct. 554, 555, 93 L.Ed. 710.

The approach to the issue of Justice Jackson, speaking for the Court in this decisive case, is instructive. First is his initial statement of the problem: "The ultimate issue in these three cases is whether tax claims *against a bankrupt bear interest* until the date of bankruptcy, as held by the court below, or until payment, as previously held by another Court of Appeals." (Italics here and later supplied.) He continues: "More than forty years ago Mr. Justice Holmes wrote for this Court that the rule *stopping interest at bankruptcy* had

then been followed for more than a century and a half. He said the rule was not a matter of legislative command or statutory construction but, rather, a fundamental principle of the English bankruptcy system which we copied." Then after finding logical implications to the same effect in § 63, sub. a(1) and (5), 11 U.S.C. § 103, sub. a(1) and (5), and § 57, sub. j, 11 U.S.C. § 93, sub. j—the latter dealing specifically with debts owed the United States or any state or subdivision thereof—he continues: "Moreover, there is no interest except that which accrues according to law—it is exactly such interest that the 'fundamental principle' cuts off as of bankruptcy. Section 57, sub. n, 11 U.S.C. § 93, sub. n, requires governmental claims to be proved in the same manner and within the same time as other debts and only for cause shown may a reasonable extension be granted. Tax claims are treated the same as other debts except for the fourth priority of payment, § 64, sub. a, 11 U.S.C. § 104, sub. a, and the provision making taxes nondischargeable, § 17, 11 U.S.C. § 35. But each of these sections is silent as to interest." Then he makes an extended analysis of the case authority and later amendments of the Bankruptcy Act to state: "The Court of Appeals concluded that by the 1926 amendment and the Chandler Act, Congress assimilated taxes to other debts *for all purposes,* including *denial of post-bankruptcy interest.* We think this is a sound and logical interpretation of the Act after those amendments to §§ 64, sub. a, and 57, sub. n." 336 U.S. 328, at pages 329, 330, 331, 332, 337, 338, 69 S.Ct. at pages 555, 556, 559.

So conclusive did this reasoning and decision seem to us that recently when the State of New York again made a like contention to us, we rejected it, citing particularly the last quotation made above. In State of New York v. Feinberg, 2 Cir., 204 F.2d 502, 503, Judge Kaufman approved a plan of reorganization of Huyler's, Inc., which granted the State on bonds issued for unpaid unemployment taxes only such interest as

other bondholders of like class were to receive, not the 9 per cent per annum provided for this tax by New York law. It is obvious that we could not properly have affirmed the approval of the plan, which made no provision for the contingency, if the law would permit the State to make later collection of the additional amount. But in fact we referred to the principle that even governmental priorities were "fully discharged upon consummation of the final plan of reorganization"; said that "it would seem anomalous that sometime later there might be a revivification of priorities once terminated"; and held the matter settled in favor of the power exercised by the trial judge under the Saper ruling that Congress had assimilated taxes to other debts " 'for all purposes, including denial of post-bankruptcy interest.' " And see also Pavone Textile Corp. v. Bloom, supra, 302 N.Y. 206, at page 211, 97 N.E.2d 755, making a like analysis of both federal and New York statutes.

The argument to the contrary appears, so far as we understand it, to be based upon the assumed premise that interest is merely "suspended" during the period of bankruptcy and, not being specifically denominated as discharged, therefore revives after termination of proceedings. This is a large premise, with a generous and uncompelled, if not surprising, conclusion. Thus stated the difficulty appears to be only semantic and, if the reasons of policy and history are as strong as the Supreme Court has indicated, should yield to semantic remedies. And it is little compliment to the Supreme Court, whose skillful and persuasive rationale in the Saper case met and surmounted the major issue, to hold that it would be balked by this limited and already indicated subordinate step, so much so, indeed, as to nullify for all practical effect its prior carefully considered holding.

The holding that interest is only suspended is a deduction from two stated "exceptions" to the English rule cited approvingly in the Saper case, 336 U.S. 328, at page 330, note 7, 69 S.Ct. 554, at page 555, *viz.*, (1) that if the alleged bankrupt proved solvent, creditors received post-bankruptcy interest before any surplus reverted to the debtor; and (2) that if securities held by a creditor as collateral produced interest or dividends during bankruptcy, these amounts were applied to post-bankruptcy interest. These exceptions, be it noted, were general, without peculiar application to tax claims. The first exception was applied (without resort to the rationale of interest as "suspended") in Johnson v. Norris, 5 Cir., 190 F. 459, appeal dismissed Norris v. Johnson, 232 U.S. 715, 34 S.Ct. 330, 58 L.Ed. 811, and in American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 267, 34 S.Ct. 502, 505, 58 L.Ed. 949, a receivership case, where the Court said: "For, manifestly, the law does not contemplate that either the debtor or the trustees can, by securing the appointment of receiver, stop the running of interest on claims of the highest dignity." See for a late acute discussion In re Macomb Trailer Coach, 6 Cir., 200 F.2d 611, certiorari denied McInnis, Trustee v. Weeks, 345 U.S. 958, 73 S.Ct. 940, 97 L.Ed. 1378, noted in 27 J.N.A.Ref.Bankr. 122, supporting a third exception, namely where the value of the security is more than sufficient to pay both the principal and interest thereon to date of payment of the claim secured thereby. Since the Supreme Court has not yet settled the extent and nature of these suggested exceptions, it may be premature to base an extended argument upon their existence; in pursuance of an overriding policy the Court may ultimately think it not desirable to allow any at all. Nevertheless we do not perceive real difficulty in accepting them if the Court so desires. But in that case these further suggestions seem in point.

To denominate uncollectible interest as merely *suspended* seems of itself a solecism. It reminds of Dean Ames' classic statement: "An immortal right to bring an eternally prohibited action is a metaphysical subtlety that the pres-

ent writer cannot pretend to understand." Lectures on Legal History 199 (1913). But, however it be denominated, of course the fact, rather than the label, controls. And the reiterated fact throughout the cases, and the basis of the extensive rationale, is—as we have seen by the quotations above—that interest ceases upon bankruptcy in the general and usual instances noted and unless the bankruptcy bar proves eventually nonexistent by reason of the actual solvency of the debtor.[5] The discretionary control of a court over interest not based on a contract is traditional. See Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 176, 3 S.Ct. 570, 28 L.Ed. 109; Redfield v. Bartels, 139 U.S. 694, 701, 11 S.Ct. 683, 35 L.Ed. 310. And this is but a response to both policy and federal statutory control. Particularly when it appears that failure thus clearly to carry the logic of the policy announced by the Court to its natural conclusion is effectually to deny realistic operation of the policy itself, do we feel that the outcome here stated is that intended by the Court.

The decision below denying this effect to the arrangement proceedings is therefore error. While injunction against state proceedings is undesirable, it is nevertheless recognized as necessary where preservation of federal dispositions in bankruptcy and protection and enforcement of federal decrees in legal rehabilitation of corporations are necessary. Ciavarella v. Salituri, 2 Cir., 153 F.2d 343; Evans v. Dearborn Machinery Movers Co., 6 Cir., 200 F.2d 125; Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; and see also Halpert v. Engine Air Service, 2 Cir., 212 F.2d 860. It may be that on remand of this action, injunctive relief will no longer be necessary; but if it is shown to be, then the district court has power to act.

Reversed and remanded for proceedings in accordance with this opinion.

FRANK, Circuit Judge (dissenting).

1. The cases cited by my colleagues (which I shall discuss later) have decided only that post-petition interest on a tax claim is not allowable unless the debtor become solvent during the bankruptcy proceeding. A different question is before us here, viz. whether confirmation of a Chapter XI arrangement discharges such interest if it has not been allowed (i e., when the debtor has not thus become solvent). No court has heretofore considered this question.

My colleagues say, in effect, that (1) it having been held such interest is not allowable, it would be absurd (2) to hold nevertheless that it is not discharged. I think it not at all absurd. For a discharge in ordinary bankruptcy or a confirmation of a Chapter XI arrangement leaves undischarged many un-allowed claims which may be immense in magnitude.

In ordinary bankruptcy, the other creditors usually have no concern with undischarged claims.[1] But not so in a Chapter XI case. For there the assenting creditors often look solely to the debtor's property for payment, yet, after confirmation, that property—thanks to § 17, 11 U.S.C.A. § 35—may be subjected to huge undischarged claims which often are unknown to, and unknowable by, the assenting creditors at the time when the court confirmed the arrangement. Such unknown and unknowable claims include, among others, the following:[2] (1) liabilities for obtaining property by false pretenses or false representations, (2) unprovable liabilities for

---

5. This is discussed as one interpretation of the Court's Saper opinion in a Note, 58 Yale L.J. 982, 992, before the later re-enforcing decisions—although the writer appears to presume in favor of the alternative accepted below.

1. Nor usually is the debtor if it is a corporation. Cf. Saper v. City of New York, 2 Cir., 168 F.2d 268, 272.

2. See § 17, 11 U.S.C.A. § 35.

wilful and malicious injuries, (3) debts not duly scheduled of creditors who had no notice or no actual knowledge of the bankruptcy proceeding, (4) debts created by fraud, embezzlement, misappropriations or defalcations, while the debtor acted in a fiduciary capacity. To the extent that the undischarged claims are known and definite in amount, the assenting creditors act with their eyes open. But often the assenting creditors are unaware and cannot learn of either the existence or the amount of many undischarged claims which may add up to many thousands of dollars and utterly disrupt the arrangement. In this respect, any Chapter XI arrangement is undeniably vulnerable, as a Chapter X plan is not.

For Chapter X provides, in § 226 and § 228, 11 U.S.C.A. § 626 and § 628, that a confirmation order wipes out all claims not excepted in the plan, or the order, as against the debtor's property dealt with by the plan.[3] But Chapter XI—see § 371, 11 U.S.C.A. § 771—incorporates § 17 as Chapter X does not, with the result that claims not discharged under § 17 are undischarged by confirmation of a Chapter XI arrangement.[4]

In 8 Collier, Bankruptcy (14th ed.) p. 1259, it is said that "the discharge provisions of Chapter X are radically different from those of Chapter XI in that debts which are not discharged under § 17 of the Act are not excluded from the operation of a discharge under Chapter X." At pp. 1267–1270, Collier says: "Section 371 specifically excludes from the operation of the discharge 'such debts as, under section 17 of this Act, are not dischargeable.' Chapter X does not make the same exception; while some consideration was given to excluding from the discharge under Chapter XI only some of the debts specified in § 17, all of those debts have been excluded by § 371." And at pp. 1270–71, Collier says: "An arrangement and its provisions, upon confirmation of the arrangement, are binding upon all creditors, including the holders of debts which are not discharged. That, however, does not affect the liability of the debtor upon the debts not discharged. If a creditor's debt was not discharged because he was not provided for in the arrangement, it is clear that he may immediately proceed against the debtor to enforce collection. But where a creditor is provided for in the arrangement, and his claim is nevertheless not discharged under § 371, the problem is suggested as to the exact extent of that creditor's rights. Thus, if the arrangement provides that creditors are to receive 20% in full settlement of their claims one month after confirmation, the right of the creditor whose debt is not discharged to enforce collection of the remaining 80% is clear. But the problem is whether he can immediately sue the debtor for the full amount

---

3. Section 226 reads: "The property dealt with by the plan, when transferred by the trustee to the debtor or other corporation or corporations provided for by the plan, or when tansferred by the debtor in possession to such other corporation or corporations, or when retained by the debtor in possession, as the case may be, shall be free and clear of all claims and interests of the debtor, creditors, and stockholders, except such claims and interests as may otherwise be provided for in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of such property."

Section 228 reads in part as follows: "Upon the consummation of the plan, the judge shall enter a final decree—(1) discharging the debtor from all its debts and liabilities and terminating all rights and interests of stockholders of the debtor, except as provided in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of property * * *."

4. Section 371 reads: "The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, including the claims specified in section 355 of this title, but excluding such debts as, under section 17 of this title, are not dischargeable."

of his original claim, or whether he can immediately sue for only 80%, and must await payment of the other 20% pursuant to the terms of the arrangement. It seems clear that he can immediately sue for the full amount, and such was the apparent intention of the framers of the Act. The creditor has the right to share in distribution, but the discharge consequent upon confirmation does not affect his original claim, which may therefore be immediately enforced in full. Where the creditor has actually received some payment under the distribution upon confirmation, that payment, of course, must be credited against the claim."

The courts can do nothing to overcome this serious defect in Chapter XI. Congress alone, by future legislation, can remove it. Accordingly, we must answer the question here, recognizing this great gap in Chapter XI. (I note in passing that, if post-petition interest on taxes is not discharged, the assenting creditors, as to such interest, take a known risk, because the amount of such interest is precisely ascertainable.)

2. Outside bankruptcy, interest on a claim for a fixed sum is ordinarily an integral part of the principal. The Bankruptcy Act so treats pre-petition interest. Does it treat differently post-petition interest? I think not. The cases, cited by the Supreme Court in New York v. Saper, 336 U.S. 328 at page 330 footnote 7, 69 S.Ct. 554, 555, as stating the correct rule, hold (1) the interest accruing during the bankruptcy has come into existence but that it is "suspended," or is "still running" during that period, and, significantly, that (2) such interest is a part of the debt for which no new or separate proof of claim is required to enable the creditor to collect it in the event of solvency while the bankruptcy proceedings are pending. See Johnson v. Norris, 5 Cir., 190 F. 459,

cited with approval in American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry. Co., 233 U.S. 261 [5], 34 S.Ct. 502, 58 L.Ed. 949. Johnson v. Norris cites many previous decisions to the same effect.[6]

In Johnson v. Norris, a bankruptcy proceeding where it turned out that the assets in the hands of the bankruptcy trustees exceeded the amount of the debts plus pre-petition interest, the court held that post-petition interest must be paid, ruling as follows (190 F. at page 465): "It is said that subsequently accruing interest should not be paid because it has never been proved as a debt. We do not think this objection is sound. The proof of an interest-bearing claim is proof of the interest collectible on such claim. Interest is an incident of, or a part of, the debt, and no separate proof of it is required." In American Iron & Steel Mfg. Co. v. Seaboard Air Line, the Court, in an equity insolvency case, after referring to the usual rule that interest is not allowed after an insolvent's property is in *custodia legis*, continued, 233 U.S. at pages 266–267, 34 S.Ct. at page 504: "But that rule did not prevent the running of interest during the receivership; and if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid. Even in bankruptcy, and in the face of the argument that the debtor's liability on the debt and its incidents terminated at the date of adjudication, and as a fixed liability was transferred to the fund, it has been held, in the rare instances where the assets ultimately proved sufficient for the purpose, that creditors were entitled to interest accruing after adjudication. 2 Bl.Com. 488; Cf. Johnson v. Norris [5 Cir.], 190 F. [459] 460(5)."

In 3 Collier (14th ed.) 1838–1839, it is said: "The principle that interest stops running from the date of the filing of

---

5. Cf. Ryerson & Son v. Peden, 318 Ill. 105, 109–110, 148 N.E. 849, 41 A.L.R. 560.

6. Brown v. Leo, 2 Cir., 34 F.2d 127, 128, cites Johnson v. Norris with approval.

the petition in bankruptcy should be understood as a rule of liquidation practice rather than as a rule of substantive law that the creditor of an interest-bearing claim is not entitled to interest beyond the filing date. The overwhelming majority of bankruptcy cases end with the distribution of a dividend that is far from satisfying the creditors even as to the principal. Disputes over interest thereby become largely academic. But it would not be accurate to allow this quantitative element to create a confusion as to what is the rule and what the exception. In liquidating interest-bearing claims, the computation of interest must be made as of some fixed date. The law selects as decisive the date of the filing of the petition in bankruptcy. It disregards, for the purposes of liquidation, interest accruing beyond that date. Yet this is primarily a technical device to cope in the most convenient and equitable manner with the debtor's apparent insolvency. True, most cases of bankruptcy liquidation are, as it were, ripe for the surgical operation saving the patient's life by amputating his debts. As to such cases the denial of interest accrued after the filing date, in its origin more a provisional method of calculation, becomes the final word. But in some cases the estate is sufficient to take care of the interest accrued after the filing date, and in this situation the debtor will not be handed over the residue without previous distribution to the creditors of such after-accrued interest up to the day of payment. Though numerically undoubtedly a negligible

minority, these cases of ultimate solvency instance what is truly the rule rather than the exception, namely that a debtor should pay interest up to *the day of payment,* a rule whose operation is merely suspended where a debtor is so hopelessly insolvent that he is unable to pay even the provable part of a claim, namely principal and interest accrued prior to bankruptcy."

Now turn to Section 17, 11 U.S.C.A. § 35.[6a] It provides that a discharge releases all "provable" debts "whether allowable in full or in part" except (*inter alia*) "such as are due as a tax levied by * * * any State". Applying this provision, we have this result: All the interest on a tax—the pre-petition and the post-petition interest—constitutes a "provable" part of the tax claim. But—absent solvency during bankruptcy—the total tax claim, including all that interest, is "allowable" only "in part." The "part" consisting of post-petition interest is the "part" not "allowable" unless solvency occurs during bankruptcy. Consequently, were it not for the exception as to taxes contained in Section 17, the post-petition interest would be discharged (when the estate remains insolvent during bankruptcy). But that exception saves it from discharge in the case of an insolvent estate.[7]

The very cases cited by my colleagues —Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 3 S.Ct. 570, 572, 28 L.Ed. 109, and Redfield v. Bartels, 139 U.S. 694, 701, 11 S.Ct. 683, 35 L.Ed. 310—hold that where interest "is reserved express-

6a. Section 17 reads in part as follows: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part except such as (1) are due as a tax levied by the United States, or any State * * *."

7. Section 755, added by amendment in 1952, provides that, upon the entry of an order in a Chapter XI proceeding directing "that bankruptcy be proceeded with, only claims for taxes legally due and owing * * * at the time of the filing of the original petition * * * and such claims as are provable under section 63 * * * shall be allowed * * *."

This provision does not at all affect Section 17 as to the discharge of any "part" of a provable tax claim which is not "allowable" in an insolvent estate. Just as before the 1952 amendment, the postpetition interest is included in the provable tax claim; but is a part not "allowable" unless solvency occurs during bankruptcy.

ly in the contract, or is implied by the nature of the promise, it becomes part of the debt, and is recoverable as of right * * *," its recovery not being "discretionary." As the New York statute expressly provides for interest on the tax here, it is part of the tax claim, and its recovery is not (as my colleagues suggest) within "the discretionary control of a court".

3. The cases my colleagues cite decide nothing contrary to my position. In Saper v. New York, 2 Cir., 168 F.2d 268, where the sole issue was of the allowability of post-petition interest on a tax claim in an ordinary bankruptcy case, we explicitly left the question open, saying, 168 F.2d at page 271: "No cases appear yet to have held that interest thus survives beyond the principal claim which gives it birth. But assuming *arguendo* that interest is not discharged upon payment of the tax claim, we do not see how that fact can be decisive on the present issue." Accordingly, the Supreme Court, in affirming our decision— City of New York v. Saper, 336 U.S. 328, 329, 69 S.Ct. 554, 93 L.Ed. 710—did not face the present problem. An article in 58 Yale L.J. (1949) 982, 992, Interest on Tax Arrearages After Bankruptcy, discussing the Saper case, says, "Presumably * * * the case holds only that interest accruing after a petition is filed is not provable; it does not seem to affect the proviso of Section 17 that bars discharge of tax claims not satisfied out of a debtor's estate." [8]

Inapposite is United States v. Edens, 4 Cir., 189 F.2d 876, affirmed without opinion in 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682. There the Court merely decided, on the basis of the Saper case, that post-petition interest on a tax claim was not allowable in a Chapter X case. No more in point are similar rulings in respect of Chapter XI arrangements—United States v. General Engineering & Mfg.

Co., 8 Cir., 188 F.2d 80, affirmed without opinion in 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682, and Com. of Massachusetts v. Thompson, 1 Cir., 190 F.2d 10—or, in respect of a general assignment—Pavone Textile Corp. v. Bloom, 302 N.Y. 206, 97 N.E.2d 755, affirmed without opinion sub. nom. United States v. Bloom, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682.

State of New York v. Feinberg, 2 Cir., 204 F.2d 502, is surely not pertinent. In the first place, it related to a confirmed Chapter X plan, and, as already noted, such confirmation eliminates all post-confirmation claims not excepted from the plan as against all the debtor's property covered by the plan. In the second place, the State—no doubt because of that Chapter X provision—expressly disavowed any right to interest accruing during the bankruptcy.[9] Our opinion so stated as follows: "The State of New York does not object to the failure to pay interest during the reorganization proceedings * * *." The State advanced this sole contention: The plan allotted to all unsecured creditors— including the State for its pre-petition taxes—debentures bearing interest at 6%; but for the bankruptcy, the State's tax claim, under a state statute, would have carried interest at 9%, while the other creditors would have been entitled to a smaller rate; the plan was therefore unfair in not giving the State, through the debentures, 9% for the post-confirmation period. In affirming the order which confirmed the plan, we held the plan fair. This amounted to saying no more than that the rate of interest on new securities under a Chapter X plan need not vary according to the varying interest rates to which the several creditors had been entitled before bankruptcy. Patently, then, the Feinberg case did not involve the question confronting us here.

8. Footnote 35, p. 989, refers to the legislative history showing that Congress has refused to amend Section 17 so as to discharge tax claims.

9. The debtor retained no property not covered by the plan.