FLOYE B. BENNETT

*v.*

METROPOLITAN LIFE INSURANCE COMPANY.

(*Jackson,* April Term, 1960.)

Opinion filed May 4, 1960.

Rehearing denied June 6, 1960.

Maddox, Maddox & Lassiter, Huntingdon, for appellant.

Moss & Benton, Jackson, for appellee.

Mr. Justice Burnett delivered the opinion of the Court.

This suit was filed for collection of the double indemnity feature on a policy of life insurance because of the

accidental death of the insured. The death benefits were paid but the accidental benefits under the provisions of the policy were contested. A demurrer was filed to the bill which fully sets forth the entire facts as well as the provisions of the policy relied on. This demurrer was sustained by the Chancellor. The beneficiary under the policy has seasonably appealed, filed an assignment of error, briefs (these on both sides are models in appellate procedure), and arguments have been heard. We now have the matter for determination.

The first page of the policy provides for the payment of $2,000 upon the death of the insured under certain conditions, etc. On the second page of the policy, following the index to the provisions styled "Provisions and Benefits," are the words "Accidental Means Death Benefit" in large black type. The company promises to pay to the beneficiary (the mother) under this policy in addition to the $2,000 life insurance as set forth on the first page an additional amount for the death of the insured if the death occurred "as the result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means, and that such death shall not have occurred * *" (then follows provisions from (a) through (f) inclusive where the accidental provisions do not apply) "or (d) as the result of travel or flight on any species of aircraft except as a fare paying passenger on a regularly scheduled passenger flight of a commercial aircraft, * * *" subsequent to this printed provision in the policy the company amended this provision to read: "(d) as the result of travel or flight on any species of aircraft if the insured has any duties relating to such aircraft or flight, or is flying in the course of any aviation training or instruc-

tion, or any training or maneuvers of any armed forces.'' This amendment to the provision of the policy was made prior to the death and while the policy was in force.

Exclusion ''d'' as originally drafted excluded accidental death benefits when killed in an aircraft except in regular commercial flight. Exclusion ''d'' as amended excluded benefits if the insured was killed in an aircraft accident when the insured had any duties regarding the flight, etc., as quoted above ''or any training or maneuvers of the armed forces.''

Then follows subdivision (f) of the exclusions, which reads: ''while the Insured is in the military, naval, or air forces of any country at war.'' This excludes the benefit while ''at war''. These are separate exclusions.

Then follows a paragraph under this ''Provisions and Benefits'' stating when and under what conditions the policy will terminate, upon age, or non-payment of premiums, etc. Then this paragraph under this ''Accidental Means Death Benefit'' provision follows:

''This provision shall be suspended during any period while the Insured is in the military, naval, or air forces of any country at war, and upon notice in writing that the Insured has entered such service, premiums shall not be payable for this provision on account of any period of such service and any such premiums previously paid on account of any such period shall be refunded.''

The case of the plaintiff rises or falls on their idea that the quoted provisions above constitute an ambiguity and that such being true the contract must be interpreted against the insurance company and in favor of

the insured. *Kentucky Home Mut. Life Ins. Co. v. Rogers,* 196 Tenn. 641, 270 S.W.2d 188.

██ As we see the question after reading and re-reading the provisions we can find no ambiguity therein. The last provision, as above quoted, is saying in rather understandable terms that "this provision", applies purely and simply to the "Accidental Means Death Benefit" provision, because this paragraph is embodied in the portion of the policy which refers to this and this alone. This quoted provision says that the double indemnity feature is suspended during any period while the insured is in the service of his country while "at war", and that during this period while he is in the service of his country "at war" the portion of the premiums charged on this policy for the double indemnity feature shall not be payable by the insured, and, if he has paid any portion of it during the time he is in the service of his country while "at war", then this will be refunded to him by the company. There is no ambiguity whatsoever in this provision of the policy when read in light of its purposes and its place in the policy.

Under the facts of the death of the insured hereinafter to be related the death did not occur while he was in the service of his country while "at war." A very interesting case with a rather comprehensive note on the question of when one is in the service of his country while "at war" is found in 36 A.L.R.2d at page 996, *Beley v. Pennsylvania Mutual Life Ins. Co.,* as written by the Supreme Court of Pennsylvania in 373 Pa. 231, 95 A.2d 202. This question, whether or not the country is "at war", is not here presented.

The bill as demurred to admits these facts:

"At the time of his death January 11, 1951, Corporal Bruce B. Bennett (the insured) was a member of a combat crew engaged in B-29 training at the Randolph Air Force Base, Randolph Field, Texas. He was a gunner, a position located in the rear compartment of the airplane. He was with his crew on a routine training flight, which proceeded in a normal manner with no undue incidents or malfunctions."

And that at the time of this flight "the pilot encountered weather conditions of such nature that he was forced to rely upon his instruments to control his aircraft." It was then that a malfunction of the instruments occurred to such an extent that the pilot was unable to control the flight of the aircraft. The pilot gave the order to abandon ship and from that point on it is unknown what happened, other than the fact that the insured met his death. There is no argument herein but that the insured met his death by accident, but the question is, was such an accident excluded under the provisions of the policy above quoted?

Clearly, to our mind, the exclusion of subdivision (d) as modified, covers the indisputable facts in this case. This provision says that there will be no double indemnity for accidental death when this death occurs as the result of a flight in any kind of an airplane, if the insured has duties relating to such flight, or is flying in the course of any training or instruction, or any training or maneuvers of any armed forces. This language to us is very plain, and unambiguous. This being true, clearly there could be no recovery under the policy.

The insurance company had a right under its freedom of contract to place such an exclusion clause in the policy when it thought that it was necessary for its protection against extensive risks. This amended provision was placed in the policy long prior to the incident bringing about the death of the insured and if the insured did not want the policy changed in this way or to agree to such a provision the insured had a perfect right to cancel the policy at that time. The insured though having accepted the policy with this provision in it is bound thereby as anyone else would be who is able to contract. This was merely a contract between the insured and the insurance company. There is no ambiguity in this contract and as far as this record is concerned there is no fraud or undue influence or things of that kind that would void the contract insofar as the insurance company is concerned.

The decree of the Chancellor must be affirmed.

### On Petition to Rehear

The plaintiff has filed a dignified, courteous and respectful petition to rehear herein.

We, after thorough consideration of this petition, must deny the same. Obviously the petition would not have been filed if the writer of this opinion hadn't put in the opinion the last paragraph therein, which to all intents and purposes really has nothing to do with the correct adjudication under the facts as set forth in the bill. Writing this paragraph was just one of those human things (we hope that the courts and this Court are human) one will do in attempting to answer some of the arguments made at the bar and in the briefs originally.

At the bottom of page 2 of our opinion [337 S.W.2d 11] we said: "Exclusion 'd' as originally drafted excluded accidental death benefits when killed in an aircraft except in regular commercial flight." Thus it is, as we have already said in our original opinion, under the policy as originally written there could have been no recovery under this provision of the policy. The amendment as made by the company subsequent to its being written was not an attempt to clarify any ambiguity therein, but was in effect a liberalization or modification of this exclusion. This subsequent re-writing of exclusion "d" (exclusion "d" excluded any benefits when killed in an airplane accident except in a commercial carrier) modified this provision by saying that if the person had any duties to perform on an airplane, other than a commercial line, and was killed benefits were excluded. Thus it is that the modification was a liberalization rather than a clarification. We find no ambiguities in the policy and must deny the petition to rehear.