**Mary Jo HAWKINS**

v.

**STATE LIFE INSURANCE COMPANY.**

**Civ. A. No. 7550.**

United States District Court,
E. D. Tennessee, N. D.

July 12, 1972.

Ted H. Lowe, Jenkins & Jenkins, Shields & Rainwater, Knoxville, Tenn., for plaintiff.

Norman H. Williams, Knoxville, Tenn., for defendant.

### MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action by the beneficiary of a life insurance policy to recover the proceeds allegedly due and payable on the insured's death which occurred June 11, 1968. Defendant seeks to defeat recovery on the ground that the circumstances of death preclude recovery under the aviation exclusion provision attached to the policy. Plaintiff contends that the insured's death resulted from a war risk instead of an aviation risk.

When he applied to defendant for insurance, the insured represented that he would enter the United States Army as a pilot. In making the application, he signed a "Supplement to Application" concerning aviation wherein he agreed that the following would constitute a part of the policy:

"This policy is issued subject to the express condition and agreement that the following risks are specifically excluded from the coverage afforded by this policy, notwithstanding anything contained in the policy to the contrary:

" 'Death of the Insured as a result of travel or flight in, or descent from or with any kind of aircraft, provided the Insured is a pilot, officer, or member of the crew of such aircraft, or is giving or receiving any kind of training or instruction or has any duties aboard such aircraft or requiring descent therefrom.' "

The policy's "Premium Waiver Disability Provision" provides that no premiums shall be waived if the disability of the insured results from "an act of war, declared or undeclared." The policy does not contain a war risk exclusion clause. This implies that war risks are contemplated as covered by the policy. Defendant makes no claim that war risks are excluded by this policy.

On the date of death the insured left his base in a light observation aircraft and did not return. His plane was found later that day. The Department of the Army's "Report of Casualty," which by its own terms is an official certificate of death, states:

"DIED 11 June 1968 in Vietnam from burns received while pilot aboard military aircraft which was hit by hostile fire, crashed and burned."

Captain David Creasman of the United States Army, who knew the deceased both in flight school and in Vietnam, was a witness in the case. Both the deceased and Captain Creasman were reconnaissance pilots who flew single-engine, light observation planes in Vietnam. The plane is a two-man, high wing craft with stick control and air speed of 85 to 290 miles per hour. It is a very responsive, highly maneuverable aerobatic craft. It has gliding capability and can land as safely without power as with power. It has three radio sys-

tems including a UHF emergency channel that is monitored by all military aircraft at all times. In the event of trouble it takes only a half second to hit the emergency switch, and get out a "Mayday" signal stating the plane's location. This action does not interfere with operating the plane. All pilots in Vietnam received intensive training in getting off this signal.

Captain Creasman was the first person to locate the deceased's crash site. Because of well established military procedures he knew that the deceased was unconscious before he could get off a distress signal. None of several aircraft fire control towers or several subsectors within communication distance had received a distress signal from anyone that morning.

The crash site was a wooded area on the side of a mountain approximately 100 meters from Highway 19, which was an ideal landing site. There were other less suitable, but survivable, landing sites within gliding distance of the crash site. The plane was upright, intact and its cockpit was burned out. The tree tops had not been knocked off, indicating that there had been no normal glide as would occur in a landing attempt. No conscious pilot would have landed with his nose pointing downhill as was this plane.

The crash site was in Viet Cong controlled territory where observation planes frequently received small arms fire from the ground. The condition of the plane indicated that its fuel tanks on the wings had exploded, thereby burning out the cockpit.

In general, where an insurer seeks to avoid payment under an exclusion clause it has the burden of showing the facts necessary to defeat recovery. American Indemnity Company v. Sears, Roebuck & Co., 195 F.2d 353 (C.A. 6, 1962). Because the insurer chooses the language in its policies, its policies are construed against it and in favor of the insured. Sturgill v. Life Insurance Co. of Georgia, 465 S.W.2d 742 (Tenn.App., 1970). An aviation exclusion clause is a valid provision in a life insurance policy. Bennett v. Metropolitan Life Insurance Company, 206 Tenn. 652, 337 S.W.2d 9 (1960).

The question presented is whether the insured's death is within the scope of the aviation exclusion clause. The question is a difficult one to answer. Clearly the insured died while acting as a pilot aboard an aircraft which was in flight, descended and crashed at the time of his death. For this reason it might appear that recovery should be barred under a literal interpretation of the aviation exclusion clause. On the other hand, the insured died from burns which presumably resulted from a fire in his aircraft. The fire was caused either directly or indirectly by hostile action in a combat zone. Whether the hostile gunfire or the crash ignited the flames is immaterial. Either way the proximate cause of death was an act of war. These circumstances show the insured's death to have been within both a war risk covered by the policy and an aviation risk excluded by the policy. The problem is to which risk is his death to be attributed.

The relevant cases are in conflict. We are advised during oral argument and in briefs that this is a case of first impression in Tennessee. Bennett v. Metropolitan Life Insurance Company, supra, is not helpful as it involved a routine training flight outside combat zones.

Wilmington Trust Company v. Mutual Life Insurance Company, 177 F.2d 404 (C.A. 3, 1949), concerned a policy with a general aviation exclusion clause and a' statement that there were no occupational or military restrictions in the policy. The insured, while in military service, was engaged in a test flight of a glider in California. He was forced to bail out

and died because his parachute failed to open. The Court held there was no ambiguity in the policy and that the aviation exclusion clause was to be literally applied, thereby barring recovery. This case is not in point because there was no war risk coinciding with the aviation risk.

In United Services Life Insurance Company v. Biscoff, 86 U.S.App.D.C. 328, 181 F.2d 627 (1950), the insured was killed as he banked away from a locomotive he was strafing and his right wing struck the locomotive causing the plane to crash and burn. The general aviation exclusion clause in that case did not except war risks and stated that its terms applied "any provision . . . to the contrary notwithstanding." The Court denied recovery on the ground that the exclusion was unqualified and applied equally to all risks.

Defendant argues that Barringer v. Prudential Insurance Company of America, 62 F.Supp. 286 (E.D.Pa., 1945) is on all fours with the instant case. The insured in *Barringer* was last seen boarding a military plane in Puerto Rico that was under orders to fly to Trinidad. The plane was never seen again after its take-off. In finding that death resulted from riding in an airplane thereby precluding recovery because of the policy's aviation exclusion clause, the Court observed that the possibility that the plane had been shot down by a German submarine was too remote to be accepted as the cause of death. The most probable inference was that the insured died as a result of an aviation risk. The court in Boye v. United Services Insurance Co., 83 U.S.App.D.C. 306, 168 F.2d 270 (1948), stated that the *Barringer* opinion indicates that recovery would have been allowed if there were reason to believe an enemy submarine shot down the plane. We agree that the *Barringer* rationale supports this view.

*Boye,* supra, granted a recovery on the proposition that an insuror invoking an exclusion in the policy has the burden of demonstrating that the facts are within the exclusion. In that case the insured was a pilot who never returned from a bombing mission over enemy controlled territory. There was no proof of the cause of death. One of the two planes that did not return from this mission was seen going down. Whether this was the insured's plane was not known. The Court held that death resulting either directly or indirectly from an act of war results from a war risk instead of an aviation risk. It compares the case to the situation of a policy excluding coverage when "operating or riding in an automobile" where the insured was killed by gunfire while riding in a car. Death results from being shot, not from riding in the car.

In Bull v. Sun Life Assurance Co., 141 F.2d 456 (C.A. 7, 1944), the insured was attempting to inflate a life raft on the wing of a seaplane downed by anti-aircraft fire when he was killed by the strafing of a Japanese fighter. The policy excluded coverage where death resulted from "service, travel or flight in . . . aircraft." In allowing recovery, the Court observed that the policy stated it shall not apply:

> ". . . if the death is *contributed to* directly or indirectly by the service, travel or flight in the aircraft. The policy deals with results and not causes or contributing causes. Aviation may have been a contributing cause, but that did not make the death an indirect result of aviation. No risk of aviation resulted in death. A risk of war resulted in death. That was a risk not excluded by the policy." 141 F.2d at 459.

Although distinguishable on its facts from the instant case, this reasoning is applicable to our case in that aviation was merely a "contributing cause" of death rather than a "result" of aviation. Aviation was a condition of Captain Hawkins' death but not its proximate

cause. The proximate cause was the enemy fire.

Mann v. Service Life Insurance Company, 284 F.Supp. 139 (E.D.Va., 1968), involved an insured serving as co-pilot in a military helicopter in a Vietnam war zone who was hit by hostile fire. The helicopter was not damaged and returned to its base. The insured died from his wounds the next day. The Court held an aviation exclusion clause to be inapplicable because death resulted from an "intervening cause totally unrelated to the operation of the aircraft." (284 F.Supp. at 140).

It is to be observed that no conflicts of law problem is presented despite the facts that the insurer is a resident of Indiana, the insured a resident of Tennessee, the policy was written in Georgia, and the death occurred in Vietnam. We have been advised by counsel that the question is one of first impression in each of these jurisdictions.

The insuror's primary obligation under the terms of the policy, is to pay "the Sum Insured to the Beneficiary immediately upon receipt at the Home Office of due proof of the death of the Insured" subject to the provisions of the policy. This language is to be construed liberally and any exclusory language is to be construed strictly.

■ The policy makes no attempt to limit this obligation in the event death results from an act of war. It is obvious that the insuror considered war risks when it chose the policy language. The Premium Waiver Disability Provisions declines to waive premiums "if the disability . . . should occur as a result of . . . an act of war, declared or undeclared." The failure to mention war risks anywhere else in the policy is an indication of the intention to cover death as a result of "an act of war."

■ The policy, however, excludes from coverage death "as a result of aviation where the insured is a pilot." Where an insured is engaged in aviation and, simultaneously, engaged in an act of war, the policy is ambiguous on the question of coverage. Under these circumstances the language of the policy taken as a whole both allows and denies coverage on the same set of facts. It is well settled that ambiguities in insurance policies are resolved in favor of the insured. See Sturgill v. Life Insurance Company of Georgia, supra.

■ Even if the policy taken as a whole is not ambiguous, a strict reading of the Aviation Provisions indicates that the insured's death was within an insured risk. The key phrase is "[d]eath . . . as a result of [aviation]." The facts of this case show that the insured did not die as a reult of aviation. On the contrary his death was a result of an act of war. Had it not been for an act of war his plane would not have crashed. In all probability he died before his plane crashed. Either way death was not the result of an aviation risk. Aviation was merely an incidental condition (circumstance) at the time of death.

At the time the insuror entered into this contract with the insured, it knew that the insured was going to enter military service shortly thereafter as a pilot. It also knew that there was a military conflict in Southeast Asia where the insured might be assigned. Having accepted premium payments to the time of death, it should not now be permitted to deny liability for this combat death.