FRIENDLY, Circuit Judge:
 

 Jaylaw Drug, Inc. (Jaylaw), a debtor which has been rehabilitated as a result of proceedings under Chapter XI of the Bankruptcy Act, appeals from a ruling of Bankruptcy Judge Schwartzberg, which was affirmed by Judge Cooper in the District Court for the Southern District of New York, 1 B.R. 512. The effect of the decision was to allow the Government to collect post-petition interest and pre- and post-petition penalties on a federal tax claim.
 

 The facts are undisputed: Jaylaw filed a petition for an arrangement under Chapter XI on May 1,1975. Thereafter the Government filed a proof of claim for withholding
 
 *526
 
 and Federal Insurance Contribution (FICA) taxes, which was amended several times. In the last amendment interest of $28.12 was calculated to the date of the Chapter XI petition. The proof of claim, which was an official Internal Revenue Service (IRS) form, contained a printed line reading “Dollar amount per day at which interest will accrue after date of this statement.” In a box at the end of the line was typed the word “None”.
 

 On March 15, 1976, Jaylaw submitted a proposed plan of arrangement. This recited that the debtor in possession had “obtained a third party who will finance the said Plan, provide the appropriate funding and support necessary to effectuate the Plan and operate the business of the debtor in possession” and that “[t]he debtor, through the assistance of the third party will secure the cooperation of the secured creditor who possesses a security interest in all of the assets of the debtor in possession.” The plan provided that the claims of priority creditors should be paid in full upon confirmation or upon such other terms as might be agreed upon between the debtor in possession and any priority creditor. Unsecured debts were to be paid only to the extent of 20% without interest over a four year period.
 

 The plan was confirmed on April 13,1978, and on May 11, 1978, the Government, as a priority creditor, was paid the full amount of its claim, including pre-petition interest. Nearly a year later the. Government levied on a bank account of Jaylaw’s for post-petition interest and penalties of $766.88 and pre-petition penalties of $142.27. Jaylaw applied to the bankruptcy court for relief against the assessment. Although the Government questioned the court’s jurisdiction, the bankruptcy judge proceeded to the merits and in a reasoned opinion ruled in the Government’s favor. On appeal to the District Court for the Southern District of New York, Judge Cooper, also in a reasoned opinion, affirmed his ruling. This appeal followed.
 

 It is common ground that the filing of a Chapter XI petition suspended the running of interest against the estate, despite the tax claim’s priority status.
 
 New York v. Saper,
 
 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), and
 
 Nicholas
 
 v.
 
 United States,
 
 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), held as much with respect to the filing of an ordinary bankruptcy petition, and the summary affirmance in
 
 United States v. General Engineering & Manufacturing Co.,
 
 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682 (1952),
 
 aff’g
 
 188 F.2d 80 (8 Cir. 1951), extended this rule to Chapter XI proceedings. However, in
 
 Bruning v. United States,
 
 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), a case of the ordinary bankruptcy of an individual, the Court held that post-petition interest could be collected from the
 
 bankrupt
 
 after termination of the proceedings. The Court’s reasoning was that under § 17a(l) the tax claim was not dischargeable and the rule barring the collection of interest from an
 
 estate
 
 was based on administrative convenience and the avoidance of unfairness among creditors in the distribution of the estate, but did not eliminate the claim, citing
 
 American Iron & Steel Mfg. Co. v. Seaboard Air Line R. Co.,
 
 233 U.S. 261, 266-67, 34 S.Ct. 502, 504, 58 L.Ed. 949 (1914) (equity receivership where estate proved sufficient to pay all debts) and
 
 Vanston Bondholders Protective Committee v. Green,
 
 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946). See also
 
 Nicholas v. United States, supra,
 
 384 U.S. at 682-89, 86 S.Ct. at 1678-82.
 

 Prior to the
 
 Bruning
 
 decision a divided panel of this court had held that
 
 Saper
 
 had the effect of preventing the collection of post-petition interest on a state tax claim by state remedies from an arranged debtor.
 
 Sword Line, Inc. v. Industrial Commissioner of New York,
 
 212 F.2d 865,
 
 cert. denied,
 
 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 654 (1954). Later we reached the same result with respect to a federal tax claim.
 
 National Foundry Co. v. Director of Internal Revenue,
 
 229 F.2d 149 (1956). When the issue arose after
 
 Bruning
 
 in
 
 In re Johnson Electrical Corporation,
 
 312 F.Supp. 840 (S.D.N.Y.1970), the district judge adhered to
 
 National Foundry
 
 primarily on the basis, which had been recognized in
 
 In re Vau
 
 
 *527
 

 ghan,
 
 292 F.Supp. 731 (E.D.Ky.1968), that, in contrast to
 
 Bruning,
 
 the tax claim in the bankruptcy proceeding had been fully paid. This court reversed, 442 F.2d 281 (1971). We held that the attempted distinction of
 
 Bruning
 
 was unconvincing since while the principal and pre-petition interest had been paid,
 
 Bruning
 
 had decided that interest continued to accrue until payment and thus survived a discharge as much as would a claim for principal. The briefs and the opinion contained relatively little discussion of a possible distinction between an ordinary bankruptcy such as that in
 
 Bruning
 
 and a proceeding for an arrangement under Chapter XI. Our decision in
 
 Johnson Electric
 
 was followed in
 
 Hugh H. Eby & Co. v. United States,
 
 456 F.2d 923 (3 Cir. 1972), although the opinion speaks of “post petition interest claims payable out of assets acquired after confirmation of the plan of arrangement,”
 
 id.
 
 at 926, without particularizing just what the nature of these assets was. The leading text considers that
 
 Sword Line
 
 and
 
 National Foundry
 
 have been “effectively overruled” by
 
 Bruning
 
 and regards the extension of the
 
 Bruning
 
 rule to debtors arranged under Chapter XI made by us in
 
 Johnson Electric
 
 and by the Third Circuit in
 
 Eby
 
 as “a natural corollary” of
 
 Bruning.
 
 3A Collier, Bankruptcy ¶ 63.16 at 1868-69 (1975).
 
 [1]
 

 It is arguable that the extension of the
 
 Bruning
 
 principle to arrangements under Chapter XI was not quite so inevitable as we and the Third Circuit assumed. In ordinary bankruptcy there is a sharp distinction between the estate and the bankrupt. The estate, after payment of administration expenses, is distributed to creditors; the bankrupt emerges with none of the assets of the estate and continues with only exempt and after-acquired assets which had never formed part of it. In arrangements the situation is more complex. In some arrangements a major part of what had been the “estate” continues to remain in the hands of the arranged debtor. In such cases the rule that while post-petition interest cannot be collected from the “estate”, it can be collected from the former debtor after the Chapter XI proceeding has terminated, may appear to be lacking in reality.
 

 Despite this we see no sufficient reason to depart from our decision in
 
 Johnson Electric
 
 even if this panel had the power to do so, which it does not, see
 
 United States v. Fatico,
 
 603 F.2d 1053, 1058 (2 Cir. 1979);
 
 Ingram v. Kumar,
 
 585 F.2d 566, 568 (2 Cir. 1978),
 
 cert. denied,
 
 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). Congress was at pains to exclude from § 371, the discharge provision of Chapter XI, “such debts as, under section 17 of this Act, are not dischargeable.” Section 17, as the Supreme Court noted in
 
 Bruning,
 
 376 U.S. at 361, 84 S.Ct. at 908, approving the language of the Ninth Circuit,
 

 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems — e. g., those of financing government — override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts, (footnote omitted).
 

 
 *528
 
 As Judge Frank pointed out in his dissent in
 
 Sword Line, supra,
 
 212 F.2d at 870-72, there are many nondischargeable claims, unknown to the debtor or its creditors, which can be asserted immediately against the rehabilitated debtor.
 
 [2]
 
 Assimilation of Chapter XI proceedings to ordinary bankruptcy is natural since Chapter XI was enacted in substitution for the composition provisions, §§ 12 and 13, of the Bankruptcy Act of 1898. Furthermore the form of disposition wherein the Chapter XI debtor retains most of the property of the “estate” is by no means the only possible outcome of a Chapter XI proceeding. In some instances the assets will have been sold and any excess of the proceeds over the compromised claims will belong to the debtor. Cf.
 
 In re WNCN, Inc.,
 
 246 F.Supp. 30 (S.D.N.Y.1965). Moreover, the distinction drawn in
 
 Bruning
 
 between the collectibility of interest on tax claims from the estate and from the bankrupt was not based on any inherent difference between the two which can be said to be absent in the Chapter XI context. Rather it was based on the differing applicability of policy considerations of equity to other creditors and administrative convenience, a difference which extends to Chapter XI cases. Finally, our result follows from the Supreme Court’s summary affirmance in
 
 General Engineering, supra.
 
 Under that case the Government cannot obtain post-petition interest from the Chapter XI “estate”. If we were to hold that it likewise cannot recover from the arranged debtor, the effect would be to eviscerate
 
 pro tanto
 
 the nondischargeability of tax debts in Chapter XI proceedings provided in §§ 17a(l) and 371, contrary to the spirit if not the letter of
 
 Bruning.
 

 The cases on which Jaylaw relies for our departing from
 
 Johnson Electric, In re Aristo Foods, Inc.,
 
 3 Bank.Ct.Dec. 476 (W.D.Mo.1977) (Bank.Ct.), aff’d on grounds of waiver and estoppel 77-2 U.S.T.C. ¶9731 (W.D.Mo.1977), aff’d 588 F.2d 1288 (8 Cir. 1978) (unpublished opinion) and
 
 In re Adams/Frederickson Associates, Inc.,
 
 77-1 U.S.T.C. ¶9337 (D.Me.1977) (Bank.Ct.), were in our view incorrectly decided by the bankruptcy courts.
 
 [3]
 
 So also was
 
 In re Becker Motor Transportation,
 
 D.N.J. Sept. 18, 1979, Civil Actions Nos. B-74-2050 and 2051, now under appeal to the Third Circuit.
 

 The Government’s claim to collect pre-petition penalties from the rehabilitated debtor is ruled in its favor by
 
 World Scope Publishers, Inc. v. United States,
 
 348 F.2d 640 (2 Cir. 1965). Judge Marshall, as he then was, reasoned that § 371 of the Bankruptcy Act discharged a debtor only from “all his unsecured debts and liabilities provided for by the arrangement” and that
 
 *529
 
 pre-petition penalties were not so provided for, since they could not have been allowed in the Chapter XI proceeding.
 
 [4]
 
 Although we have found no controlling authority with respect to post-petition penalties on a pre-petition tax claim,
 
 [5]
 
 we see no sufficient basis for excepting these from the reasoning of
 
 Bruning
 
 with respect to post-petition interest. See 3A Collier, Bankruptcy ¶ 63-16 at 1869. Such claims, like those for principal, pre-and post-petition interest and pre-petition penalties on United States tax claims, are not dischargeable under § 17a(l).
 
 [6]
 
 The deterring effect of the penalty and its nondischargeability would be impaired by holding that the pendency of a Chapter XI proceeding eliminates the accrual of the penalty against a rehabilitated debtor as well as against the estate.
 
 [7]
 

 This leaves for consideration Jay-law’s claim that even if the Government would generally be entitled to prevail, it cannot do so in this case, at least as to post-petition interest, because of the line in the various proofs of claim redding:
 

 Dollar amount at which interest will accrue after date of this statement . [None]
 

 Apart from the general question how far estoppel will lie against the Government discussed in the recent opinions in
 
 Hansen v. Harris,
 
 619 F.2d 942, (2 Cir., 1980), the Government’s assertion of a right to payment from the rehabilitated debtor is not inconsistent with the proof of claim if filed against the estate. The proof of claim correctly followed the rule of
 
 New York v. Saper, supra,
 
 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, that interest on tax claims during administration does not accrue against the estate. To be sure the distinction made by the Supreme Court in
 
 Bruning
 
 probably would not be apparent to a layman and the IRS would be well advised either to eliminate the line from the proof of claim or to insert appropriate qualifying language. But proofs of claim in bankruptcy are not intended for him who runs; they are submitted for examination by lawyers skilled in bankruptcy law, who should be familiar with decisions of the Supreme Court and, in this circuit, of this court. To them the statement in the proof of claim would not have been misleading. There is thus no need to inquire whether other elements essential to an es-toppel are here present or whether estoppel would lie against the Government if they were.
 

 Affirmed.
 

 [1]
 

 . See also 9 Collier, Bankruptcy ¶ 9:32 at 412: “Clearly the two circuit courts are correct in their application of
 
 Bruning.
 
 The fact that
 
 Bruning
 
 involved a bankruptcy case and the later two cases involved Chapter XI cases is immaterial . . .” The author considers that the only way to reach a contrary result would be an interpretation of the 1966 amendment of § 17a(l), subsequent to
 
 Bruning,
 
 which limited nondischargeability to “taxes which became legally due and owing to the United States . . . within three years preceding bankruptcy.” The argument, which, of course, would also apply to the
 
 Bruning
 
 situation, would be that post-petition interest does not accrue “within three years preceding bankruptcy” but rather after bankruptcy. We agree with the author that such a construction of the 1966 amendment would be unduly literal. The objective was to afford relief against stale tax claims, not to prevent the collection of post-petition interest on a claim rendered nondis-chargeable by § 17a(l).
 

 [2]
 

 . Judge Frank noted that the situation under Chapter X is different since, by virtue of §§ 226 and 228, “a confirmation order wipes out all claims not excepted in the plan, or the order, as against the debtor’s property dealt with by the plan.” 212 F.2d at 871.
 

 [3]
 

 . In Aristo
 
 Foods
 
 the bankruptcy judge relied on the less than complete payment rationale of
 
 In re Vaughan,
 
 292 F.Supp. 731 (E.D.Ky.1968), which we disapproved in
 
 Johnson Electric,
 
 442 F.2d at 283-84; on
 
 United States v. Mighell,
 
 273 F.2d 682 (10 Cir. 1959), which the Supreme Court disapproved by upholding the contrary ruling of the Ninth Circuit in Bruning; and on
 
 Sword Line, Inc. v. Industrial Comm’r, supra,
 
 212 F.2d 865, which we consider to have been effectively overruled by
 
 Bruning,
 
 as we held with respect to
 
 National Foundry
 
 in
 
 Johnson Electric, supra,
 
 442 F.2d at 283. In
 
 Adams/Frederickson,
 
 the bankruptcy judge relied, as does Jaylaw, on § 397 which provides:
 

 Any provision in this chapter to the contrary notwithstanding, all taxes which may be found to be owing to the United States or any State from a debtor within one year from the date of the filing of a petition under this chapter, and have not been assessed prior to the date of the confirmation of an arrangement under this chapter, and all taxes which may become owing to the United States or any State from a receiver or trustee of a debtor or from a debtor in possession, shall be assessed against, may be collected from, and shall be paid by the debtor or the corporation organized or made use of for effectuating an arrangement under this chapter:
 
 Provided, however,
 
 That the United States or any State may in writing accept the provisions of any arrangement dealing with the assumption, settlement, or payment of any such tax.
 

 This section enlarges the rights of the Government with respect to the collection of taxes in Chapter XI proceedings, rather than restricts them, see 9 Collier, Bankruptcy, ■' 12.07 at 720.-8-, 12.
 

 [4]
 

 . This clearly follows if, as held in
 
 California State Board of Equalization v. Goggin,
 
 183 F.2d 489, 493 (9 Cir.),
 
 cert. denied,
 
 340 U.S. 891, 71 S.Ct. 207, 95 L.Ed. 646 (1950), cited in
 
 World Scope, supra,
 
 348 F.2d at 641, § 57j is applicable in a Chapter XI proceeding. We see no reason why, under the consistency test stated in § 302, it should not be.
 

 [5]
 

 . The post-petition penalty in
 
 Nicholas v. United States, supra,
 
 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 was quite different in nature. That decision upheld the allowance as an administrative expense of a penalty claim against a trustee for his own failure to file returns.
 

 [6]
 

 . Section 6659(a)(2) of the I.R.C. provides:
 

 Any reference in this title to “tax” imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.
 

 [7]
 

 .District court decisions are in accord with this view, see, e. g.,
 
 In re Monarch Products Co.,
 
 79-1 U.S.T.C. ¶ 9278 (E.D.Mich.1979);
 
 In re Rawson, Inc.,
 
 79-1 U.S.T.C. ¶ 9226 (W.D.Wash.1978) (Bank.Ct.). In other cases allowing collection from the rehabilitated debtor it is not entirely clear whether the court was dealing with pre-petition penalties, post-petition penalties, or both. See, e. g.,
 
 In re WNCN, Inc., supra,
 
 246 F.Supp. 30;
 
 United States v. Roberts Motor Express, Inc.,
 
 375 F.Supp. 1165 (N.D.N.Y.1973).