632 F.2d 242
 81-1 USTC P 9348, 2 Collier Bankr.Cas.2d 1078,
6 Bankr.Ct.Dec. 1014, Bankr. L. Rep. P 67,605
 In the Matter of BECKER'S MOTOR TRANSPORTATION, INC., a New
Jersey Corporation with its principal place of
business in the State of New Jersey, Debtor
(Bankruptcy No. B-74-2050) In the Matter of NEEDHAM'S MOTOR
SERVICE, INC., a Delaware Corporation with its
principal place of business in the State
of New Jersey, Debtor
(Bankruptcy No. B-74-2051)
v.
DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Appellant.
 No. 79-2796.
 United States Court of Appeals,
Third Circuit.
 Argued July 8, 1980.
Decided Sept. 4, 1980.
 
 Crummy, Deldeo, Dolan & Purcell, Newark, N. J., for appellees; Donald H. Steckroth (argued), Newark, N. J., of counsel.
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Karl Schmeidler, Michael J. Roach (argued), Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant; Robert J. Del Tufo, U. S. Atty., Newark, N. J., of counsel.
 Before SEITZ, Chief Judge, ADAMS, Circuit Judge, and LORD, Chief District Judge.*
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal from an order of the district court, affirming the issuance by the bankruptcy court of a summary judgment and an injunction in favor of debtors, raises a number of difficult questions regarding the law of bankruptcy. The threshold inquiry is whether the bankruptcy court had jurisdiction to reopen a Chapter XI proceeding to adjudicate the personal liability of a rehabilitated debtor for pre-petition penalties and post-petition interest on a nondischargeable tax debt that had been satisfied pursuant to a plan of arrangement. If the bankruptcy court had jurisdiction, we must next determine whether it was barred from issuing injunctive or declaratory relief with respect to the collection of taxes assessed after the arrangement was completed. Finally, on the merits we are required to consider whether the Internal Revenue Service was estopped from attempting to collect pre-petition penalties and both pre-petition and post-petition interest.
 
 I. FACTS
 
 2
 On December 12, 1974, the plaintiffs, Becker's Motor Transportation, Inc., and Needham's Motor Service, Inc., filed petitions for an arrangement under Chapter XI of the Bankruptcy Act. The Internal Revenue Service (IRS) filed proofs of claim in the amount of $74,792.04 against the debtors' estate on October 21, 1975 for nondischargeable tax debts and pre-petition interest owed by Becker's and Needham's. In filing the proofs of claim, the IRS left blank the line on the form designated "(D)ollar amount per day at which interest will accrue after date of this statement." After all claims had been filed, the debtors proposed a joint plan of arrangement, which was confirmed by the bankruptcy court on December 1, 1976. In order to obtain sufficient cash for the consummation of the plan, the debtors borrowed over $550,000.00.
 
 
 3
 Pursuant to an order of distribution issued in conformity with the plan, the tax indebtedness that had been claimed by the IRS was paid in full; nonpriority creditors received payment at the rate of 7 1/2 cents per dollar. Following distribution, the arrangement estate was closed and the debtors resumed business operations. Thereafter, in September 1977, the IRS sought to collect from the rehabilitated debtors $34,960.14 in pre-petition penalties and post-petition interest on the satisfied tax debts. No notice of these claims had been provided during the arrangement.
 
 
 4
 On May 18, 1978, the debtors applied to the bankruptcy court, which had closed the estate, for an order reopening the proceedings. On the same day, the request was granted and the debtors filed a complaint seeking declaratory and injunctive relief against any further collection efforts by the IRS. The IRS moved unsuccessfully to dismiss the complaint, and the debtors later moved for summary judgment. After hearing oral argument, the bankruptcy court granted the debtors' motion and enjoined further IRS collection efforts.
 
 
 5
 The IRS appealed to the district court, which, following oral argument, affirmed the orders of the bankruptcy court. In an unpublished opinion, the district court held that the IRS was equitably estopped from asserting claims for which it had not given notice during the Chapter XI proceeding. The district court stated that the debtors had relied to their detriment on the assumption that such claims would not be asserted following completion of the plan. The district judge further held that the bankruptcy court had been empowered to enjoin the collection efforts by the IRS, notwithstanding the prohibition against such injunctions contained in 26 U.S.C. § 7421(a)(1976), on the ground that the rehabilitative purpose reflected in the Bankruptcy Act overrides the force of the anti-injunction statute.
 
 
 6
 On this appeal, the IRS argues that the bankruptcy court had no jurisdiction to reopen the arrangement proceedings solely for the purpose of enjoining the collection of penalties and interest on the debtors' nondischargeable tax debts. The IRS further contends that the district court incorrectly held that the failure of the IRS to give notice during the proceedings of its intention to collect pre-petition penalties and post-petition interest barred collection of these sums following completion of the plan. Moreover the IRS urges that even if there was jurisdiction and even if the government was equitably estopped, the district court was mistaken in upholding the injunction issued by the bankruptcy court.
 
 
 7
 We vacate the judgment of the district court and remand.
 
 II. JURISDICTION
 
 8
 The initial issue before us is whether bankruptcy courts are vested with jurisdiction to adjudicate the personal liability of an arranged debtor who seeks declaratory and injunctive relief against collection of tax claims in a reopened proceeding. We note that this question, like all others in the present case, is governed not by the Bankruptcy Reform Act of 1978, Pub.L.No.95-598, 11 U.S.C.A. §§ 101-151326, but by the old Bankruptcy Act (formerly codified at 11 U.S.C.). Although the 1978 Act took effect on October 1, 1979, the Act's savings provision provides:
 
 
 9
 A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.
 
 
 10
 Pub.L.No.95-598, § 403(a), 11 U.S.C.A. note preceding § 101. The present controversy has consistently been characterized by the parties, the bankruptcy court, and the district court as a reopening of the proceedings begun in 1974, and we are asked to adjudicate rights and liabilities that stem from the plan of arrangement entered into as a result of those proceedings. We believe the savings provision of the 1978 Act requires that the proceedings on reopening "shall continue to be governed by the law applicable to" the proceedings initiated in 1974. Also, we note that on May 18, 1978, when the debtors applied to the bankruptcy court for the order reopening the proceedings, the 1978 Act was not yet in effect. Under these circumstances, we conclude that the old Bankruptcy Act must be applied.
 
 
 11
 In no case brought to our attention has the jurisdictional question been squarely addressed.[1] Nonetheless, § 2(a)(2A) of the old Act (formerly codified at 11 U.S.C. § 11(a)(2A)) appears to have vested the bankruptcy courts with jurisdiction to resolve the validity of claims for tax penalties and interest assessed against a debtor. That section confers on courts of bankruptcy jurisdiction to "(h)ear and determine ... any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed" (emphasis added).[2] Further, this jurisdiction is not defeated simply because the estate was closed following the 1976 arrangement, since bankruptcy courts are vested with broad discretion to reopen cases after an estate has been administered. See, e. g., In Re Seats, 537 F.2d 1176 (4th Cir. 1976). Section 2(a)(8) of the old Act (formerly codified at 11 U.S.C. § 11(a) (8)) authorizes bankruptcy courts to "reopen estates for cause shown," and Bankruptcy Rule 515 provides that "(a) case may be reopened, on application by the bankrupt, or other person to administer assets, to accord relief to the bankrupt, or for other good cause" (emphasis added). We read §§ 2(a)(2A), 2(a)(8) and Bankruptcy Rule 515 as conferring on courts of bankruptcy jurisdiction to reopen a closed estate for the purpose of providing "relief to the bankrupt" by adjudicating the bankrupt's personal liability for tax penalties and interest.
 
 III. INJUNCTIVE AND DECLARATORY RELIEF
 
 12
 The next question we resolve is whether the bankruptcy court was authorized to grant the equitable relief requested by plaintiffs. The IRS urges that a bankruptcy court is prohibited from enjoining IRS collection efforts, and that the district court therefore erred in sustaining the injunction issued by the bankruptcy court. 26 U.S.C. § 7421(a) states in pertinent part:
 
 
 13
 Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b) (1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . .
 
 
 14
 Although the district court found the exemptions set forth in § 7421(a) inapplicable to this case, it nevertheless held that the bankruptcy court had properly enjoined the IRS collection efforts on the ground that the case fell within the ambit of Bostwick v. United States, 521 F.2d 741 (8th Cir. 1975), which represents a judicially created exception to the strictures of § 7421(a). In Bostwick, the Court of Appeals for the Eighth Circuit, in upholding the issuance of an injunction against collection of taxes from a bankrupt, declared that the rehabilitative purpose of the Bankruptcy Act outweighs the force of § 7421(a). The court stated:
 
 
 15
 We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act.
 
 
 16
 521 F.2d at 744. Inasmuch as we are of the opinion that judicially created exemptions to § 7421(a) contravene clear congressional intent, it is unnecessary to address the question whether the factors held controlling in Bostwick are present here.
 
 
 17
 Congress has not chosen to include bankruptcy court adjudications within the exceptions to § 7421(a). Indeed, Congress most recently enacted additional exceptions to § 7421(a) on November 2, 1966, see Pub.L.No.89-719, Title I, § 110(c), 80 Stat. 1144, only four months after conferring on bankruptcy courts through 11 U.S.C. § 11(a)(2A), Pub.L.No.89-496, § 1, 80 Stat. 270 (July 5, 1966), the power to "hear and determine ... any question arising as to the amount or legality of any unpaid tax." Had Congress wished its 1966 amendments to the Bankruptcy Act to authorize bankruptcy courts to issue injunctions against the collection of tax, we believe this intention would have been reflected in the amendments to 26 U.S.C. § 7421(a) enacted later that year. However persuasive the arguments against application of § 7421(a) to bankruptcy court adjudications may be, we believe that a bankruptcy court exemption cannot be judicially fashioned without contravening congressional intent. Although there may be some merit in permitting the policy behind the Bankruptcy Act to outweigh the rationale that underpins the antiinjunction legislation, such argument should be addressed to Congress.[3] Accordingly, we conclude that the district court erred in sustaining the injunction that has been issued in this case.
 
 
 18
 When we consider the power of the bankruptcy court to issue declaratory relief with respect to tax liability, however, a different result is compelled. The declaratory judgment provision of the federal judicial code, 28 U.S.C. § 2201, specifies that "except with respect to Federal taxes, any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." The prohibition against declaratory judgments concerning federal tax claims is limited by the terms of § 2201 to "courts of the United States," an expression which 28 U.S.C. § 451 defines as including "the Supreme Court of the United States, courts of appeals, district courts constituted by Chapter 5 of this title, including the Court of Claims, the Court of Custom and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." Bankruptcy courts are not included in this enumeration and they are not courts whose judges hold office during good behavior. This suggests that they are not "courts of the United States" to which the § 2201 ban on declaring federal tax liabilities applies. It is also significant that the statute forbidding issuance of injunctions against the assessment or collection of any tax, 26 U.S.C. § 7421(a), applies to "any court" (emphasis added). Had Congress wished in § 2201 to exclude all courts from issuing declaratory judgments regarding federal tax liability of citizens, we believe it would have followed the pattern of § 7421(a). From its failure to do so, we conclude that courts of bankruptcy are not bound by the § 2201 ban on the issuance by "courts of the United States" of declaratory relief with respect to federal tax liability.
 
 
 19
 Although the limitations imposed by § 2201 do not apply, courts of bankruptcy, like any other courts, have no power to afford declaratory relief unless affirmatively authorized to do so by some statutory provision. We believe that this authority can be found in §§ 2(a)(2A) and 2(a)(15) of the old Bankruptcy Act. Section 2(a)(15) (formerly codified at 11 U.S.C. § 11(a)(15)) specified that courts of bankruptcy have the power to "(m)ake such orders, issue such process, and enter such judgments, ... as may be necessary for the enforcement of the provisions of this title." We find the power to issue declaratory judgments "necessary for the enforcement" of § 2(a)(2A) of the Act (formerly codified at 11 U.S.C. § 11(a)(2A)), which provides that bankruptcy courts shall "(h)ear and determine ... any question arising as to the amount or legality of any unpaid tax." Consequently, we hold that under the old Bankruptcy Act, a bankruptcy court is vested with authority to issue declaratory relief with respect to tax claims asserted against a debtor in a reopened proceeding.[4]
 
 IV. EQUITABLE ESTOPPEL
 
 20
 A. Pre-Petition Penalties and Post-Petition Interest
 
 
 21
 The district court held that the IRS was equitably estopped[5] from collecting pre-petition penalties and post-petition interest from the debtors in this action because of the "failure of the government to reveal its intention to make such claims in the Chapter XI proceedings, thereby misleading all participants in the arrangement who relied to their detriment upon the finality of the Proof of Claim." The IRS contends that the district court erred in applying the doctrine of equitable estoppel, and that the judgment of the district court, at least in this respect, should be reversed.[6]
 
 
 22
 It is well-established that obligations for pre-petition penalties and post-petition interest that accrue on a tax debt comprise personal liabilities of the debtor, and survive payment of the principal debt pursuant to an arrangement. In Bruning v. United States, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), the Supreme Court, confirming that post-petition interest on a nondischargeable tax debt was not allowable against a bankruptcy estate,[7] held that such claims could be asserted against the discharged bankrupt. The Court reasoned that the policies underlying the prohibition against the collection of post-petition interest claims against a bankruptcy estate-avoidance of diminution of the amount payable to competing creditors and administrative convenience-are inapplicable where the personal liability of the debtor is involved. Id. at 362-63, 84 S.Ct. at 908-09. In Hugh H. Eby Co. v. United States, 456 F.2d 923 (3d Cir. 1972), we held that the rule of Bruning is applicable to a Chapter XI arrangement.[8] On the basis of Bruning, we declared that Congress, in determining that tax debts were nondischargeable,[9] had made a judgment that the importance of financing the government outweighs the "value of giving the debtor a fresh start." Id. at 925. Eby extended the Bruning rationale by declaring that the rehabilitative purpose of the Bankruptcy Act was not an obstacle to holding the Chapter XI debtor personally liable for post-petition interest on a tax debt where the debtor had acquired assets subsequent to confirmation of a Chapter XI arrangement.
 
 
 23
 In similar fashion, although claims for pre-petition penalties on a tax debt are not allowable against a bankruptcy estate,[10] debtors may be held personally liable for such penalties following confirmation of a Chapter XI plan of arrangement. In World Scope Publishers, Inc. v. United States, 348 F.2d 640, 642 (2d Cir. 1965), the Court of Appeals for the Second Circuit found support for this result in the principle that "there is no reason to believe that (the) deterrent function" achieved by the imposition of tax penalties "is less worthy than the rehabilitative function served by Chapter XI proceedings."
 
 
 24
 With these principles in mind, we turn to the question whether IRS should be estopped from asserting liabilities for penalties and interest against the debtors in this case. Traditionally, an equitable estoppel has been imposed when one party has relied to its detriment on the conduct of the other party, and such reliance was justified. The record supports the conclusion that the debtors relied on the conduct of the IRS during the arrangement as signifying that the IRS would not assert claims for pre-petition penalties and post-petition interest following completion of the plan. The IRS does not deny that the debtors so relied.[11]
 
 
 25
 Nor does the IRS question that the debtors' reliance would work to their detriment if collection of the claims at issue here is permitted. That conclusion is also supported by the record and follows from an understanding of a Chapter XI proceeding. The debtors in the present action borrowed a substantial sum in order to effectuate the arrangement. This enabled them to satisfy debts and to continue to operate as a business enterprise, albeit on a smaller scale. Inasmuch as that portion of the debtors' estate which survived distribution was the minimum that could support the smaller scale enterprise, it may well be that collection of the claims at issue here will render continued operations impracticable. Had the debtors known that substantial claims would be asserted in addition to those listed on the proof of claim form, the plan might not have been proffered and the loan obligation might not have been incurred, since the purpose of the plan sustaining the business might not have been achieved.
 
 
 26
 What the IRS contests on this appeal is the conclusion of the district court that, as a matter of law, the conduct of the IRS justified the debtors' conclusion that the proof of claim form represented all tax claims that the IRS would assert against them. In so concluding, the district court pointed to the failure of the IRS to inform the debtors during the arrangement proceeding of its intention to assert claims for pre-petition penalties and post-petition interest reasonably induced the debtors' conclusion that the IRS would not seek to collect such sums after completion of the plan. Inasmuch as claims for pre-petition penalties and post-petition interest are nondischargeable, however, a reasonable debtor should expect that the IRS will seek to enforce such claims. Since the applicable caselaw provides that these claims may be asserted only as personal liabilities of the debtor, a reasonable debtor should also expect that, where such debts have been incurred, the IRS will assert the claims against the debtor personally, and not against the estate. The inverse assumption espoused by plaintiffs here-that the IRS would assert claims for pre-petition penalties and post-petition interest against the estate, or not at all-runs counter to the Supreme Court's decision in Bruning and our decision in Eby, which make clear that such claims are not allowable against a debtor's estate.
 
 
 27
 Were we to hold that the IRS was barred from asserting claims that it is entitled to collect under Bruning and Eby on the ground that it had failed to provide notice during the arrangement proceeding of its intention to seek satisfaction of the debts, we would, in effect, impose on the IRS a duty to apprise debtors of applicable judicial decisions. This we decline to do. Instead, we conclude that the debtors in this case misconstrued the law in assuming that consummation of the arrangement would satisfy all tax claims against them, including interest and penalties, and that that circumstance does not absolve them of liability for the debts which they incurred.
 
 
 28
 The debtors also contend that the IRS is estopped from asserting claims for post-petition interest because it left blank the line on the proof of claim form marked "Dollar amount per day at which interest will accrue after date of this statement." Post-petition interest is not an allowable claim against a bankrupt's estate, however.[12] For this reason, the inclusion of an entry for this sum on a proof of claim form would not be required. The absence of an entry for post-petition interest of the proof of claim form filed in this case should not have caused the debtors' counsel to conclude that the IRS had waived a right which it could not properly have asserted on that form-namely, the right to enforce the personal liability of the debtors.
 
 
 29
 In submitting the proof of claim form, the IRS neither waived its right to assert claims for pre-petition penalties and post-petition interest nor induced the debtors' mistaken assumption that they would not be held liable for debts of this character. We construe the form as it should have been understood by the debtors' counsel, rather than in terms of the debtors' possible confusion over its meaning. The reasoning of the Court of Appeals for the Second Circuit in In re Jaylaw, 621 F.2d 524, 529 (2d Cir. 1980), is in accord with this approach. There Judge Friendly stated:
 
 
 30
 (P)roofs of claim in bankruptcy are not intended for him who runs; they are submitted for examination by lawyers skilled in bankruptcy law, who should be familiar with decisions of the Supreme Court and, in this circuit, of this court. To them the statement in the proof of claim would not have been misleading.
 
 
 31
 While any hardship that may be imposed on the plaintiffs is regrettable, it would not be appropriate to penalize the IRS for the failure of plaintiffs to recognize that they were personally liable for pre-petition penalties and post-petition interest.[13] Concluding as we do that the debtors' assumption that claims for these items would not be asserted against them after completion of the plan constituted a misunderstanding that was not induced by the IRS, and that their reliance on the assumption was therefore unjustified, we hold that the district court erred in affirming the bankruptcy court's application of the doctrine of equitable estoppel to the claims of the IRS for pre-petition penalties and post-petition interest.
 
 B. Pre-petition Interest
 
 32
 The bankruptcy court did not determine whether any portion of the sum claimed by the IRS comprised pre-petition interest on the principle tax debt. Plaintiffs contend that some portion of the claim is of this character. The doctrine of equitable estoppel has considerable merit as applied to any claim for pre-petition interest asserted by the IRS against the debtors. Pre-petition interest, unlike pre-petition penalties and post-petition interest, is recoverable against the debtor's estate in a Chapter XI proceeding.[14] Indeed, it is our understanding that as part of the plan of arrangement entered into by Becker's and Needham's in 1976, the IRS collected some pre-petition interest, together with the full principal debt.
 
 
 33
 Courts that have considered the personal liability of an arranged debtor have not extended the obligation of payment to claims for pre-petition interest. Allowing claims for pre-petition interest could work to the debtor's detriment in several respects. Inasmuch as the creditors who participated in the plan of arrangement might have agreed to accept a lower distribution rate per dollar from the estate to accommodate the claim for pre-petition interest if it had been filed under the plan, the debtor might be required to pay a greater amount if the claim is asserted after the plan has been consummated. This potential for increased debtor liability should not be permitted.
 
 
 34
 Furthermore, the debtors here borrowed a substantial amount in order to effectuate the arrangement. They entered into the plan relying on a calculation, which justifiably omitted a sum for additional pre-petition interest. But for the legitimate assumption that completion of the plan would represent satisfaction of any claim for pre-petition interest that the IRS could have asserted, the debtors might not have entered into the loan agreement. If collection of the pre-petition claim after consummation would render continued business operations impracticable, the debtors would be in a worse position than if the claim had been satisfied by distribution of the estate, because they would not in the latter circumstance have incurred repayment obligations on the loan.
 
 
 35
 Under the case law, the plaintiffs were justified in assuming that the IRS had asserted all pre-petition interest claims in the proceedings begun in 1974. In view of their reliance on this assumption and the potential for economic injury that would result from allowing the government to collect such interest at this stage, we hold that the district court did not err in affirming the judgment of the bankruptcy court insofar as that judgment declared that the IRS was estopped from collecting pre-petition interest from the arranged debtors.[15]
 
 V. CONCLUSION
 
 36
 The determination by Congress that penalties and post-petition interest which accrue on a tax debt are nondischargeable represents a judgment that, at least in this context, the importance of financing the federal government outweighs the value of debtor rehabilitation. We are bound to adhere to that judgment, notwithstanding the sympathetic plight of the rehabilitated debtor who has launched a fresh beginning perhaps unaware of the vulnerability of his newly acquired assets to the collection of such debts. But where the federal government has bypassed an opportunity to enforce its statutory right to collect a nondischargeable tax debt, as when it asserts a claim for pre-petition interest after completion of a Chapter XI plan, a court-imposed estoppel against collection of such claim will not frustrate the will of Congress. Inasmuch as Congress has prohibited the issuance of an injunction against the collection of taxes, however, the remedy in such a case must be limited to a declaration of tax liability.
 
 
 37
 Accordingly, this case will be remanded to the district court which, in turn, shall remand the matter to the bankruptcy court with instructions to determine the portion of the sum claimed by the IRS, if any, which comprises pre-petition interest. Insofar as any portion of the claim sought consists of pre-petition interest, the IRS will be equitably estopped from collection activities. The IRS will, however, be permitted to collect pre-petition penalties and post-petition interest from the arranged debtors. The portion of the district court order upholding the issuance of the injunction by the bankruptcy court will be reversed.
 
 
 38
 SEITZ, Chief Judge, concurring.
 
 
 39
 I agree with the majority that the bankruptcy court had jurisdiction to reopen this case to adjudicate the personal liability of the debtors. I also agree with the majority's conclusions regarding the debtors' estoppel claims. I write separately because I believe that the bankruptcy court has the power to grant injunctive as well as declaratory relief in this case. It is necessary to address this issue because the bankruptcy court will have to reach the question of an appropriate remedy if it finds on remand that part of the sum sought by the IRS consists of prepetition interest.
 
 
 40
 Sections 2(a)(2A), 2(a)(15), and 17(c) of the old Bankruptcy Act gave the bankruptcy court jurisdiction to adjudicate the dischargeability of a tax debt and to make all necessary orders in the exercise of this jurisdiction. I agree with the opinion of the United States Court of Appeals for the Eighth Circuit in Bostwick v. United States, 521 F.2d 741 (8th Cir. 1975), that these sections evidence congressional intent that the comprehensive statutory scheme governing bankruptcy overrides the general policy represented by the anti-injunction statute, 26 U.S.C.A. § 7421(a) (West 1980 Supp.) and that section 7421(a) does not prohibit the bankruptcy court from granting injunctive relief in exercising its power to determine questions of dischargeability. Therefore, I believe that the bankruptcy court has the power to grant injunctive relief in this case.
 
 
 
 *
 Honorable Joseph S. Lord, III, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In In re Jaylaw, 621 F.2d 524 (2d Cir. 1980), the bankruptcy court reopened a Chapter XI proceeding solely to determine the validity of claims against the rehabilitated debtor for pre-petition penalties and post-petition interest that had been brought against the debtor after consummation of a plan of arrangement. The Court of Appeals for the Second Circuit, after noting that a jurisdictional objection had been raised and rejected below, proceeded to dispose of the case on substantive grounds. Id. at 525-26
 
 
 [2]
 Jurisdiction in the bankruptcy courts over debtor liability is also supported by an analysis of the consequences that might occur if the bankruptcy court did not possess such authority. The personal liability of a debtor can be a critical factor in the determination by a bankruptcy court whether it is appropriate to confirm a Chapter XI plan of arrangement. The absence of bankruptcy court jurisdiction to ascertain debtor liability could result in the confirmation of a plan of arrangement that the court might have deemed infeasible had it been able to take into account the future liability of the debtor. Such a result would be at odds with the intent of Congress in conferring bankruptcy court jurisdiction to effectuate debtor rehabilitation under Chapter XI
 Additionally, as this very case illustrates, the adjudication of claims against a debtor, no less than of those against his estate, is laden with tension between the goal of debtor rehabilitation and that of satisfaction of creditor interests. Because bankruptcy court expertise extends to the accommodation of competing interests that is required where the personal liability of a debtor is at issue, there is considerable merit in having the bankruptcy court adjudicate all claims that jeopardize a debtor's rehabilitation.
 
 
 [3]
 It is worth noting that Congress, in enacting the Bankruptcy Reform Act of 1978, Pub.L.No.95-598, 11 U.S.C.A. §§ 101-151326, did not address the question whether bankruptcy courts may enjoin the collection of taxes, although it expressly provided that bankruptcy courts may "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax." 11 U.S.C.A. § 505(a)(1)
 
 
 [4]
 It is significant that when Congress enacted the Bankruptcy Reform Act of 1978, it understood the former Bankruptcy Act to have conferred authority on bankruptcy courts to declare tax liability. The provision of the Reform Act explicitly granting bankruptcy courts power to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax," 11 U.S.C.A. § 505(a)(1), was said to be "derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act" (former section 11(a)(2A) of Title 11). Note of Committee on the Judiciary, Senate Report No. 95-989, U.S.Code Cong. & Admin.News 1978, p. 5787, reprinted at 11 U.S.C.A. § 505 note
 
 
 [5]
 The principle that estoppel may not be asserted against the government was once firmly entrenched in American jurisprudence. See, e. g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); United States v. Kirkpatrick, 22 U.S. (9 Wheat.) 720, 735 (1824); Lee v. Munroe, 11 U.S. (7 Cranch) 366, 369 (1813). In recent years, however, federal courts have demonstrated an increased willingness to estop the government in appropriate circumstances. See, e. g., United States v. Wharton, 514 F.2d 406 (9th Cir. 1975); United States v. Lazy FC Ranch, 481 F.2d 985 (9th Cir. 1973). See generally Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979). The doctrine of equitable estoppel as applied to tax claims in bankruptcy was initially announced in In Re Aristo Foods, 3 B.C.D. 476 (W.D.Mo.), aff'd, 3 B.C.D. 869 (W.D.Mo.1977), aff'd, 582 F.2d 1288 (8th Cir. 1978)
 
 
 [6]
 Our decision in Hugh H. Eby Co. v. United States, 456 F.2d 923 (3d Cir. 1972), that post-petition interest could be collected from the successor to a rehabilitated Chapter XI debtor is not dispositive of the question whether the IRS should be equitably estopped from post-consummation collection of claims of which it gave no pre-consummation notice. The proof of claim form filed in Eby had informed the debtor that a claim for post-petition interest would be asserted by the IRS
 
 
 [7]
 See New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949)
 
 
 [8]
 Accord, In re Johnson Electrical Corp., 442 F.2d 281 (2d Cir. 1971)
 
 
 [9]
 See 11 U.S.C. § 523(a)(1) (Supp.1978)
 
 
 [10]
 Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962)
 
 
 [11]
 Although the factual determination that the debtors relied to their detriment on the conduct of the IRS is implicit in the bankruptcy court's application of the doctrine of equitable estoppel, the bankruptcy court made no formal findings regarding these issues
 
 
 [12]
 New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949)
 
 
 [13]
 We agree with the Second Circuit's suggestion in In re Jaylaw, 621 F.2d 524 (2d Cir. 1980), that the IRS should prepare proof of claim forms to make more clear to debtors that it reserves the right to assert claims for pre-petition penalties and post-petition interest after the bankrupt's arraignment is completed
 
 
 [14]
 See Bankruptcy Act § 63(a)(1) (formerly codified at 11 U.S.C. § 103(a) (1)). See also New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), where all parties agreed that tax claims against a bankrupt estate bear interest at least "until the date of bankruptcy."
 
 
 [15]
 The factors that led us in Eby to decide that post-petition interest could be collected from the successor to an arranged debtor are not present in this case insofar as pre-petition interest is concerned. First, the plaintiff in Eby sought a holding that post-petition interest was dischargeable altogether. Such a determination would have contravened § 17 of the Bankruptcy Act (formerly codified at 11 U.S.C. § 35.) Here, equitable estoppel of the collection of pre-petition interest would not render such interest absolutely dischargeable; rather, it would merely limit the time within which such interest could be collected. Second, we emphasized in Eby that the misconstruction of the law by the successor to the debtor in assuming that he would not be held personally liable for post-petition interest did not entitle him to protection from such liability. By contrast, the plaintiffs in the present situation were justified in assuming that implementation of the plan of arrangement would satisfy any debt for pre-petition interest